# *EXHIBIT A*

**EFiled: Feb 9 2005 4:00PM EST**
**Filing ID 5108097**

### IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
### IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| BIG LOTS STORES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. $1081-N$ |
| | ) |
| BAIN CAPITAL FUND VII, LLC, a | ) |
| Delaware Limited Liability Company; | ) |
| BCIP ASSOCIATES II, a Delaware | ) |
| General Partnership; BCIP TRUST | ) |
| ASSOCIATES II, a Delaware General | ) |
| Partnership; BCIP ASSOCIATES II-B, a | ) |
| Delaware General Partnership; BCIP | ) |
| TRUST ASSOCIATES II-B, a Delaware | ) |
| General Partnership; SANKATY HIGH | ) |
| YIELD PARTNERS II, L.P., a Delaware | ) |
| Limited Partnership; MICHAEL L. | ) |
| GLAZER, individually; ROBERT J. | ) |
| FELDMAN, individually; JOSHUA | ) |
| BECKENSTEIN, individually; | ) |
| MATTHEW LEVIN, individually; and | ) |
| ROBERT WHITE, individually, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Big Lots Stores, Inc. ("Big Lots"), by and through its attorneys, for its complaint

against Bain Capital Fund VII, LLC; BCIP Associates II; BCIP Trust Associates II; BCIP

Associates II-B; BCIP Trust Associates II-B; Sankaty High Yield Partners II; L.P., Michael L.

Glazer; Robert J. Feldman; Joshua Beckenstein; Matthew Levin; and Robert White, states as

follows:

### INTRODUCTION

1. By this action, Plaintiff Big Lots seeks to recover $45 million plus interest

from Defendants for breach of fiduciary duty, aiding and abetting breach of fiduciary duty,

unjust enrichment, fraud, and civil conspiracy resulting from the Defendants' actions in looting

the Havens Corner Corporation ("HCC"), and rendering HCC insolvent and unable to repay its debt to Big Lots, which now totals more than $52 million.

2. HCC is a holding company formed by Big Lots in December 2000 to facilitate Big Lots' sale of its "K*B Toy" retail toy business to various of the Defendants. HCC's sole asset was 100% of the stock of KB Consolidated, Inc. ("KB Consolidated"), which itself was a holding company that, through intermediate holding companies, owned various operating subsidiaries doing business under the "KB" name (the "Operating Subsidiaries"). The value of HCC, therefore, was essentially the value of the Operating Subsidiaries.

3. In December 2000, as part of a leveraged buy-out transaction, Big Lots sold HCC, and thus KB Consolidated and the Operating Subsidiaries, to the KB Acquisition Corporation ("KB Acquisition"), which was a wholly owned subsidiary of KB Holdings, Inc. ("KB Holdings"). KB Holdings was and is owned by various of the Defendants and other members of the KB Companies' (defined below) management. After the transaction, KB Holdings became the ultimate parent of HCC, various intermediate holding companies, and the Operating Subsidiaries. KB Holdings, its direct and indirect subsidiary holding companies, and the Operating Subsidiaries, are hereinafter referred to collectively as the "KB Companies."

4. The purchase price for HCC consisted of approximately $302.5 million in cash and debt, plus certain warrants. Of the $302.5 million, the Defendants contributed a total of only $20.6 million as equity, and then immediately took out $2.5 million as a "success fee." As a result, Defendants' net equity investment was only $18.1 million. Big Lots continued as an investor in HCC, taking back a note for $45 million (the "HCC Note"). On information and belief, the remaining $237 million consisted of third-party loans secured by HCC's assets, including those of the Operating Subsidiaries. Thus, while Defendants made an $18.1 million

equity investment in the KB Companies, Big Lots retained a structurally superior $45 million debt investment

5. In or around April 2002, notwithstanding the deterioration in the KB Companies' business as the nation slid into recession in 2001 and early 2002, the Defendants severely leveraged and further encumbered the already strained KB Companies by borrowing many millions of dollars[1] from secured lenders and paying the proceeds, together with substantially all of the KB Companies' available cash, to themselves in the form of bonuses and repurchases of 65% of KB Holdings' stock, worth in excess of $85 million. Together, the KB Companies' borrowings and the subsequent cash payments to the Defendants are hereinafter referred to as the "Equity Distribution Transaction."

6. The effect of the Equity Distribution Transaction was to encumber substantially all of HCC's assets and to strip all of the value from HCC and the Operating Subsidiaries. The Equity Distribution Transaction resulted in Defendants' receiving an enormous and unjustified return on their investment of more than 600% (not counting the substantial additional bonus payments made to Defendants Glazer and Feldman and other insiders) and ultimately in HCC's default on Big Lots' $45 million HCC Note.

7. As part of the Equity Distribution Transaction, HCC and the Operating Subsidiaries made millions of dollars of payments to certain of the Defendants and other insiders, including: (1) in excess of $85 million in cash payments, principally to the Bain Defendants (as defined below), as well as Defendant Glazer, Defendant Feldman, and various

---

[1] Big Lots has specific information regarding the details of certain of the transactions that are described in this complaint. At the present time, however, Big Lots has not disclosed that specific information out of an abundance of caution in light of certain confidentiality agreements to which Big Lots is a party  Big Lots reserves its right, at the appropriate time, to file an amended complaint containing such details.

other insiders, in redemption of 65% of KB Holdings' stock, resulting in enormous and unjustified gains on their initial equity investments; (2) multi-million dollar bonus payments to Defendants Glazer and Feldman; and (3) millions of dollars of additional bonuses paid to various other insiders.

8.    Big Lots seeks recovery for breach of fiduciary duty against Michael L. Glazer ("Glazer") and Robert J. Feldman ("Feldman") for their conduct, as officers and directors of HCC and various other KB Companies, in facilitating and approving the Equity Distribution Transaction.    Specifically, on information and belief, Defendants Glazer and Feldman (a) improperly manipulated the KB Companies' accounting to improve the KB Companies' apparent financial condition; (b) provided materially misleading information to an investment banker in an effort to obtain an opinion that HCC and its affiliates would be solvent after the Equity Distribution Transaction was completed; and (c) approved the Equity Distribution Transaction, including a substantial dividend payment from HCC to KB Acquisition, and ultimately to certain of the Defendants, bypassing and not paying the $45 million HCC Note.

9.    The sources of these insider payments were substantially all of the KB Companies' cash on hand and many millions of dollars in loans secured against the Operating Subsidiaries' assets. These loans and cash payments stripped substantially all of the value from the Operating Subsidiaries and thereby from HCC. The actions of Defendants Glazer and Feldman in assuring a windfall equity return while leaving the KB Companies insolvent and unable to pay their obligations as they matured, proximately resulted in HCC's inability and failure to repay the HCC Note. Because the Equity Distribution Transaction rendered HCC insolvent and unable to repay its obligations, Glazer and Feldman owed fiduciary duties to Big Lots as HCC's sole substantial creditor. Moreover, because Defendants Glazer and Feldman

-4-

personally benefited from it, this self-dealing transaction is subject to the "entire fairness" standard of review.

10. Big Lots seeks recovery for breach of fiduciary duty and aiding and abetting a breach of fiduciary duty against Joshua Beckenstein ("Beckenstein"), Matthew Levin ("Levin"), and Robert White ("White" and collectively with Beckenstein and Levin, the "Bain Director Defendants") as well as Bain Capital Fund VII, LLC; BCIP Associates II; BCIP Trust Associates II; BCIP Associates II-B; BCIP Trust Associates II-B; and Sankaty High Yield Partners II, L.P. (collectively, the "Bain Defendants"). On information and belief, some combination of Glazer, Beckenstein, Levin, and White constituted the board of directors of KB Holdings, which is the ultimate parent of HCC and its affiliates. The Bain Defendants own a majority and controlling equity interest in KB Holdings. The Bain Director Defendants and Bain Defendants induced Defendants Glazer and Feldman to breach their fiduciary duties to HCC in the manner described above, including by inducing Glazer and Feldman to approve the dividend payment from HCC to KB Acquisition. The vast majority of the dividend personally benefited the Bain Defendants, because KB Holdings used the improper dividend to pay the Bain Defendants an inflated price for a substantial portion of their stock. On information and belief, the Bain Director Defendants are also Managing Directors of the Bain Defendants and approved the Equity Distribution Transaction both as directors of KB Holdings and as agents of the Bain Defendants.

11. Big Lots seeks restitution for unjust enrichment against Defendants Glazer, Feldman, and the Bain Defendants, who each received many millions in cash as bonuses or for the repurchase of a substantial portion of their shares in KB Holdings.

12. Big Lots also seeks: damages for fraud against Defendant Feldman, for his April 2002 material misrepresentations made directly to Big Lots; damages for civil conspiracy against all Defendants, for their concerted actions in connection with Big Lots and the Equity Distribution Transaction; recovery for Defendant Glazer's breach of his fiduciary duty as a director of Big Lots, and damages against all defendants for intentional interference with contractual relations.

## PARTIES

13. Plaintiff Big Lots is an Ohio corporation with its principal place of business at 300 Phillipi Road, Columbus, Ohio.

14. Defendant Glazer is an individual residing at 5 Gleneagles Drive, Lenox, Massachusetts. Glazer is a long-time manager and executive of the KB Toys companies. On information and belief, Glazer was at all times relevant hereto a director of HCC and KB Holdings, as well as chief executive officer of various of the KB Companies, including HCC and KB Holdings.

15. Defendant Feldman is an individual residing at 6 Tyler Court, East Greenbush, New York. Feldman is a long-time manager and executive of the KB Toys companies. Feldman has had intimate financial knowledge of, and detailed and significant financial responsibility for, the KB Toys companies since 1988. On information and belief, Feldman was at all times relevant hereto a director of HCC and KB Holdings, as well as chief financial officer of various of the KB Companies, including HCC and KB Holdings.

16. Defendant Beckenstein is an individual residing at 52 High Rock Road, Wayland, Massachusetts. On information and belief, Beckenstein was at all times relevant hereto a director of KB Holdings (now KB Toys, Inc.), a Delaware Corporation.

17. Defendant Levin is an individual residing at 41 Stuart Road, Newton, Massachusetts. On information and belief, Levin was at all times relevant hereto a director of KB Holdings (now KB Toys, Inc.), a Delaware Corporation.

18. Defendant White is an individual residing at 23 Chadwick Road, Weston, Massachusetts. On information and belief, White was at all times relevant hereto a director of KB Holdings (now KB Toys, Inc.), a Delaware Corporation.

19. The Bain Defendants are each Delaware corporations that have their principal places of business in Boston, Massachusetts. On information and belief, each is an affiliate of Bain Capital, Inc., and is a private equity investment fund or other investment vehicle.

## FACTS

### Big Lots Sells KB to Bain

20. Prior to December 2000, Big Lots (then known as Consolidated Stores Corporation), through its wholly-owned subsidiary KB Consolidated, Inc. ("KB Consolidated"), owned and operated more than 1,300 retail toy stores across the 50 states, Puerto Rico and Guam under the K*B Toys, K*B Toy Works, and K*B Toy Outlet names. In addition, KB Consolidated conducted online sales of children's products under the name KBkids.com.

21. During 2000, Big Lots received various indications of interest or offers for its KB toy business, including an offer from Defendant Glazer to purchase KB Consolidated in a leveraged buy-out transaction.

22. Glazer ultimately withdrew his offer and joined with the Bain Defendants and other members of the KB Companies' management to make a new offer to purchase KB Consolidated.

23. On December 7, 2000, Big Lots sold KB Consolidated to the Bain Defendants, Glazer, and their group in a multi-step transaction in which Big Lots (1) created

-7-

HCC as a holding company for KB Consolidated, through which Big Lots owned the Operating Subsidiaries; and (2) sold HCC to KB Acquisition for approximately $302.5 million, plus certain warrants in KB Holdings (KB Acquisition's parent and now the ultimate parent of the Operating Subsidiaries).

24. The Bain Defendants and possibly others invested the net amount of $18.1 million in cash to purchase HCC. The remainder of the $302.5 million purchase price was financed. Big Lots provided the HCC Note, thereby financing $45 million of the purchase price. Approximately $237 million was paid by leveraging the assets of the Operating Subsidiaries, i.e., by borrowings secured by the existing assets.

25. By virtue of the HCC Note, Big Lots is the only substantial creditor of HCC.

**The 2001 Business Downturn**

26. In the Defendants' first year of ownership of and control over HCC and the Operating Subsidiaries, the economic climate in the United States began to deteriorate. Following the events of September 11, 2001, and by November 2001, Defendants knew or should have known that HCC and the Operating Subsidiaries' toy business had been severely and adversely affected by both the general economic downturn and by specific trends in the retail sales and toy sales businesses. The economy was entering a recession, retail sales were down, and mall sales (on which the KB Companies substantially relied) were down even in relation to depressed retail sales.

27. In addition to the general deterioration of the economy in 2001, KB Companies, along with other traditional retail sellers, suffered from increased competition from Wal-Mart and other "superstore" retailers. HCC and the KB Companies temporarily weathered the storm through the end of 2001 and into 2002.

**The Equity Distribution Transaction**

28. Despite the deterioration of HCC's business and the already tenuous cash-flow position of the Operating Subsidiaries, the Defendants determined to undertake a series of transactions in April 2002, by which they could loot the value of the Operating Subsidiaries by borrowing substantially against their respective assets and paying out the proceeds, together with cash previously on hand, as enormous and unjustified cash bonuses and share repurchases

29. Specifically, on April 23, 2002, the Defendants caused HCC and the Operating Subsidiaries to consummate the Equity Distribution Transaction, in part pursuant to a Redemption, Repurchase, and Equity Restructuring Agreement (the "Repurchase Agreement"). The Defendants participated in and caused the following transactions to occur: (1) the Operating Subsidiaries borrowed substantially all the money they could; (2) the Operating Subsidiaries made millions of dollars of bonus payments to Defendants Glazer and Feldman and various other insiders; (3) HCC paid an up-stream dividend of many millions of dollars to its parent, KB Acquisition, without paying or reserving against the $45 million HCC Note; (4) KB Acquisition in turn paid the dividend to its parent, KB Holdings; and (5) KB Holdings then used the proceeds of the dividend (financed with cash and debt) to repurchase 65% of its stock, worth in excess of $85 million, from the Bain Defendants, Glazer, Feldman, and other KB insiders.

30. KB Holdings also bought back $1.95 million in warrants from Big Lots. However, Big Lots was not involved in negotiating, and had no right as a warrant holder to approve or block, either the Equity Distribution Transaction or the sale of the warrants. Rather, Big Lots was contractually obligated, as a warrant holder, to surrender its warrants under a "drag along" provision in its Warrant Holder Agreement

31. To induce Big Lots to cooperate with and not object to or seek legal relief with respect to the Equity Distribution Transaction, and to surrender its warrants, Defendant Feldman wrote to Charles Haubiel, General Counsel of Big Lots, on or about April 23, 2002, certifying that following the Repurchase Agreement, which was undertaken as part of the Equity Distribution Transaction, KB Holdings would have "a consolidated net worth of not less than $20,000,000."

32. Feldman's representation was knowingly false, as KB Holdings was rendered insolvent and unable to pay its obligations by the Equity Distribution Transaction.

33. Defendants' conduct was targeted against Big Lots, which was the only substantial creditor of HCC. Moreover, Defendants acted with particular animus toward Big Lots when, on information and belief, Defendants specifically considered, but rejected, repaying Big Lots' structurally superior debt ahead of the payments to themselves that were made pursuant to the Equity Distribution Transaction. Defendants decided not to repay the obligation to Big Lots to enrich themselves and maximize their personal recovery from the Equity Distribution Transaction.

34. Defendant Glazer was personally interested in the Equity Distribution Transaction, which occurred while he was a director of Big Lots. At that time, Glazer knew or should have known that the alleged justification for the Equity Distribution Transaction was based on materially misleading information and projections and that the Equity Distribution Transaction would render HCC insolvent and unable to repay the HCC Note. Notwithstanding this knowledge, Glazer failed to inform Big Lots of these material facts and approved the Equity Distribution Transaction to obtain its benefits for himself.

-10-

35. The Equity Distribution Transaction resulted in the Defendants receiving an enormous and unjustified return of more than 600% on their investment in just over 16 months, not counting the substantial additional bonus payments made to Defendants Glazer and Feldman and other insiders.

36. The Equity Distribution Transaction had the effect of stripping essentially all of the value from HCC and its sole asset, KB Consolidated (owner of the Operating Subsidiaries). The transaction essentially converted all of the value in KB Consolidated and the Operating Subsidiaries into cash by using substantially all of their assets to secure these borrowings and then using the loan proceeds and cash on hand to pay out well in excess of $85 million, principally to the Bain Defendants, Glazer, and Feldman in the form of bonuses and share repurchases.

37. The Equity Distribution Transaction left HCC and the Operating Subsidiaries on the brink of bankruptcy, and left HCC insolvent and unable to pay its obligations as they matured, specifically rendering it unable to repay the HCC Note to Big Lots. Though the KB Companies limped through 2003, their over-levered, insolvent business could not survive the relatively weak 2003 holiday season. As a result, HCC and its direct and indirect subsidiaries sought protection from their creditors under chapter 11 of the Bankruptcy Code on January 14, 2004. HCC is a debtor in those proceedings. The HCC Note is currently due and payable in the amount of $52 million, consisting of $45 million in principal plus accrued interest at the time of the bankruptcy filing of $7 million.

**Defendants' Use of Erroneous and Misleading
Projections to Support the Equity Distribution Transaction**

38. To support the Equity Distribution Transaction, Defendants sought and received a "solvency opinion" from Houlihan Lokey Howard & Zukin ("Houlihan").

-11-

39. On information and belief, to obtain this solvency opinion, Defendants supplied Houlihan with materially misleading financial projections certified by Defendants Feldman and Glazer, which all Defendants knew or should have known were unrealistic.

40. The Defendants' proceeded with the Equity Distribution Transaction knowing that their purported reliance on the Houlihan solvency opinion was patently unreasonable and knowing that the transaction would leave the KB Companies insolvent and unable to pay its obligations as they matured.

### The Post Closing Operations and The Inevitable Insolvency

41. That the projections provided to Houlihan were patently unreasonable has been made clear by the performance of the KB Companies following the Equity Distribution Transaction. Among other things, on information and belief, shortly after entering into the Equity Distribution Transaction, KB Companies ran into a substantial liquidity shortage.

42. Though the KB Companies continued to operate their businesses through 2003, the KB Companies (including HCC) were forced to file a chapter 11 bankruptcy petition on January 14, 2004. As a result of that filing, the HCC Note was accelerated and HCC defaulted on its payment.

43. Neither HCC nor any of the debtors in the bankruptcy proceeding is a party to this action. By this action, Big Lots asserts its individual claims against Defendants and does not seek a recovery against, or on behalf of, any debtor in that bankruptcy proceeding.

## COUNT I
### Breach of Fiduciary Duty Against Defendants Glazer and Feldman

44. Plaintiff realleges the allegations of paragraphs 1 through 43, above, and incorporates those paragraphs as if fully set forth herein.

45. On information and belief, Defendants Glazer and Feldman were the sole directors of HCC and KB Massachusetts.

46. The Equity Distribution Transaction rendered HCC insolvent and unable to pay its obligations as they matured, and Glazer and Feldman knew the Equity Distribution Transaction would render HCC insolvent and unable to pay its obligations as they matured. The Equity Distribution Transaction therefore created fiduciary duties running from Glazer and Feldman to Big Lots.

47. Defendants Glazer and Feldman breached their fiduciary and other duties to Big Lots by the conduct alleged above, including by intentionally, recklessly, or negligently manipulating KB's accounting; providing materially misleading information and projections to Houlihan to support the Equity Distribution Transaction; and approving that transaction, thereby rendering HCC insolvent and allowing HCC to bypass payment of Big Lot's debt in favor of legally subordinate equity dividends.

48. Defendants Glazer and Feldman were interested parties to the Equity Distribution Transaction because it gave them substantial bonuses. Their participation in and approval of the Equity Distribution Transaction constituted a breach of their duties of loyalty.

49. The breach of fiduciary duties injured Big Lots by causing HCC to be unable to repay the principal and interest on the HCC Note.

50. Plaintiff has no adequate remedy at law.

### COUNT II
### Breach of Fiduciary Duty
### Against the Bain Director Defendants

51. Plaintiff realleges the allegations of paragraphs 1 through 50, above, and incorporates those paragraphs as if fully set forth herein.

-13-

52. At all times material to this action, the Bain Director Defendants have served as directors of KB Holdings. In this position, the Bain Director Defendants have had the power, directly or indirectly, to control the affairs of HCC and the Operating Subsidiaries.

53. The Equity Distribution Transaction rendered HCC insolvent and unable to pay its obligations as they matured and the Bain Director Defendants knew or should have known that the Equity Distribution Transaction would render HCC and the other KB Companies insolvent. The Equity Distribution Transaction therefore created fiduciary duties running from the Bain Director Defendants to Big Lots.

54. The Bain Director Defendants were interested in the Equity Distribution Transaction, which caused in excess of $85 million to be paid to KB Holdings stockholders, principally the Bain Defendants. Among other things, on information and belief, the Bain Director Defendants were managing directors of the Bain Defendants and held significant economic interests therein.

55. The Bain Director Defendants breached their fiduciary duties to Big Lots, as HCC's creditor, by approving the Equity Distribution Transaction, which furthered their own interests and proximately harmed Big Lots.

56. The Bain Director Defendants' breaches of fiduciary duty injured Big Lots by causing HCC to be unable to repay the principal and interest on the HCC Note.

57. Plaintiff has no adequate remedy at law.

## COUNT III
### Aiding and Abetting Breach of Fiduciary Duty
### <u>Against the Bain Defendants and the Bain Director Defendants</u>

58. Plaintiff realleges the allegations of paragraphs 1 through 57, above, and incorporates those paragraphs as if fully set forth herein.

-14-

59. At all times material to this action, the Bain Defendants have owned or controlled a majority of the shares of KB Holdings, which is the ultimate parent of HCC and the Operating Subsidiaries. In this position, the Bain Defendants had the power, directly or indirectly, to control the affairs of HCC and the Operating Subsidiaries and to control or influence the actions of Defendants Glazer and Feldman through, among other ways, controlling the terms and conditions of their employment, including the payment of bonuses and other compensation.

60. At all times material to this action, the Bain Director Defendants have served as directors of KB Holdings. In this position, the Bain Director Defendants have had the power, directly or indirectly, to control the affairs of HCC and the Operating Subsidiaries and to control or influence the actions of Defendants Glazer and Feldman through, among other ways, controlling the terms and conditions of their employment, including the payment of bonuses and other compensation.

61. The Bain Director Defendants and the Bain Defendants knew or should have known that the Equity Distribution Transaction would render HCC and the other KB Companies insolvent and unable to pay their obligations.

62. The Bain Director Defendants and the Bain Defendants knew or should have known that Defendants Glazer and Feldman, as directors of HCC, had or would have as a result of the Equity Distribution Transaction, fiduciary obligations to Big Lots.

63. The Bain Director Defendants and the Bain Defendants knew or should have known that Glazer and Feldman would breach their fiduciary duties by, among other things, approving the Equity Distribution Transaction.

-15-

64. The Bain Director Defendants and the Bain Defendants knowingly induced Glazer and Feldman to breach their fiduciary duties, for the purpose of enriching the Bain Defendants. These actions constituted the aiding and abetting of the breaches of fiduciary duty.

65. The Bain Director Defendants and the Bain Defendants actions in aiding and abetting Glazer and Feldman' breaches of fiduciary duty injured Big Lots by causing HCC to be unable to repay the principal and interest on the HCC Note.

66. Plaintiff has no adequate remedy at law.

## COUNT IV
### Unjust Enrichment Against the Bain Defendants, Glazer and Feldman

67. Plaintiff realleges the allegations of paragraphs 1 through 66, above, and incorporates those paragraphs as if fully set forth herein.

68. As a result of the Equity Distribution Transaction, the Bain Defendants, Feldman, Glazer and other insiders received in excess of $85 million in cash for the repurchase of certain of their shares in KB Holdings.

69. Each of these payments constituted a benefit to the Bain Defendants, Glazer and Feldman for which the KB Companies did not receive any consideration, at a time when all Defendants knew of the HCC Note and that, a result of the Equity Distribution Transaction, HCC was insolvent and unable to pay its obligations as they matured.

70. The Bain Defendants, Glazer and Feldman each were unjustly enriched by the receipt of these payments. It would be unjust to Big Lots for the Bain Defendants, Glazer and Feldman to retain the benefit of these payments.

71. Plaintiff has no adequate remedy at law.

-16-

## COUNT V
## Fraud Against Defendant Feldman

72. Plaintiff realleges the allegations of paragraphs 1 through 0, above, and incorporates those paragraphs as if fully set forth herein.

73. To induce Big Lots to cooperate with and not object to the Equity Distribution Transaction, Defendant Feldman wrote to Charles Haubiel, General Counsel of Big Lots, on or about April 23, 2002, certifying that following the Repurchase Agreement, which was undertaken as part of the Equity Distribution Transaction, KB Holdings would have "a consolidated net worth of not less than $20,000,000."

74. Feldman's representation was false. In fact, following the Equity Distribution Transaction, KB Holdings was insolvent.

75. Feldman knew or should have known that his representation was false.

76. In addition to his false representations, Feldman failed to disclose that he and the only other HCC Director, Glazer, were interested in the Equity Distribution Transaction, and he failed to disclose the extent of that interest.

77. Feldman knew or should have known that his misrepresentations and omissions were material and that Big Lots would rely on them.

78. Big Lots relied to its detriment on Feldman's misrepresentations and omissions by, among other things, entering into the Repurchase Agreement, surrendering its warrants, acquiescing in the Equity Distribution Transaction, and not taking affirmative action to block the transaction and otherwise protect its rights.

79. Big Lots was injured by its reliance on Feldman's misrepresentations and omissions, because HCC was rendered insolvent and unable to repay the HCC Note as a result of the Equity Distribution Transaction.

## COUNT VI
### Civil Conspiracy Against All Defendants

80. Plaintiff realleges the allegations of paragraphs 1 through 79, above, and incorporates those paragraphs as if fully set forth herein.

81. The Bain Defendants and the Bain Director Defendants agreed and conspired with Defendants Glazer and Feldman to have the Bain Directors, together with Glazer and Feldman, use their respective positions as directors and/or officers of various of the KB Companies to cause the consummation of the Equity Distribution Transaction, for the purpose of enriching themselves and their principals.

82. Pursuant to this conspiracy, Defendants Glazer and Feldman prepared and provided to Houlihan materially misleading information and projections to support the Equity Distribution Transaction; and, with the Bain Director Defendants, approved that transaction, thereby rendering HCC insolvent and allowing HCC to bypass payment of Big Lots' debt in favor of legally subordinate equity dividends.

83. Big Lots was injured by the actions undertaken as part of this conspiracy because HCC was rendered insolvent and unable to repay the HCC Note as a result of the Equity Distribution Transaction.

## COUNT VII
### Breach Of Fiduciary Duty Against Defendant Glazer

84. Plaintiff realleges the allegations of paragraphs 1 through 83 above, and incorporates those paragraphs as if fully set forth herein.

-18-

85. At all time relevant hereto, through May 20, 2003, Defendant Glazer was a director of Big Lots. As a director, Glazer owed fiduciary duties to Big Lots, including duties of loyalty, candor, and disclosure.

86. Defendant Glazer breached his fiduciary duty to Big Lots by engaging in a plan and scheme that had the foreseeable effect of rendering an asset of Big Lots – the HCC Note – valueless.

87. Glazer's conduct in planning and implementing the Equity Distribution Transaction which rendered the HCC Note valueless breached his duty of loyalty to Big Lots because Glazer derived personal benefit from the Equity Distribution Transaction.

88. In addition, Glazer knew or should have known that the Equity Distribution Transaction would render HCC insolvent and failed to convey to his fellow Big Lots' directors information concerning the Equity Distribution Transaction known to him which the Big Lots' board could have used to take action to protect the value of the HCC Note. Glazer's sequestering of information from his fellow Big Lots' directors constituted a further breach of his fiduciary duty to Big Lots.

89. The breach of fiduciary duties injured Big Lots by causing HCC to be unable to repay the principal and interest on the HCC Note.

90. Plaintiff has no adequate remedy at law.

## COUNT VIII
### Intentional Interference With Contractual Relations Against All Defendants

91. Plaintiff realleges the allegations of paragraphs 1 through 90 above, and incorporates those paragraphs as if fully set forth herein.

92. The HCC Note is a contract between Big Lots and HCC.

93. All defendants knew of the existence of the HCC Note and that it constituted a contract between Big Lots and HCC.

94. The defendants' planning and implementation of the Equity Distribution Transaction was intentional conduct that rendered HCC insolvent, rendered HCC's performance of its obligations under the HCC Note impossible, and caused HCC to default on the HCC Note.

95. Defendants had no justification for rendering HCC's performance under the HCC Note impossible and causing HCC to default on the HCC Note.

96. As a result of defendants' intentional interference with HCC's performance under the HCC Note, Big Lots has been damaged in the amount of $45 million in principal of the HCC Note plus accrued interest of more than $7 million.

**WHEREFORE,** Big Lots respectfully requests that the Court enter judgment in its favor and against all Defendants, jointly and severally, and grant Big Lots the following relief:

A.    Recovery against all defendants, jointly and severally, in the amount of $45 million, representing the principal amount of the HCC Note, plus interest that has accrued or would accrue on the HCC Note through its maturity date of December 7, 2010;

B.    Restitutionary damages against Defendants Glazer and Feldman and the Bain Defendants individually in the amount by which they were unjustly enriched, which amounts shall be determined at trial; and

C.    Such other and further relief as the Court determines is just and appropriate.

-20-

Dated: February 9, 2005

ROSENTHAL MONHAIT GROSS &
GODDESS, P.A.

By: _____

Norman M. Monhait (DSBA #1040)
Kevin Gross (DSBA #209)
919 Market Street, Suite 1401
Citizens Bank Center
P.O. Box 1070
Wilmington, Delaware 19899-1070

Attorneys for Plaintiff

OF COUNSEL:

Jeff J. Marwil
James A. McKenna
Anders C. Wick
JENNER & BLOCK LLP
One IBM Plaza
Chicago, IL 60611
(312) 222-9350

-21-