# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| *In re:* <br><br> KB TOYS, INC., *et al.*, <br><br> Debtors. | Chapter 11 <br><br> Case No. 04-10120 (DDS) <br> (Jointly Administered) |
| KB TOYS, INC., *et al.*[1], <br><br> Plaintiff(s), <br><br> v. <br><br> BIG LOTS STORES, INC., <br><br> Defendant. | Adv. Proc. No. 05-___ |

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff KB Toys, Inc., and the other above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by their undersigned attorneys, as and for their *Verified Complaint or Declaratory and Injunctive Relief*[2] against Defendant Big Lots Stores, Inc., alleges as follows:

---

[1] The Plaintiffs are the following 70 entities: KB Toys, Inc.; KB Acquisition Corporation; Havens Corners Corporation; KB Toys (US), Inc.; Southdale Kay-Bee Toy, Inc.; Mall of America Kay-Bee Toy, Inc.; KB Holdings, LLC; K B Toy of Pennsylvania, Inc.; K B Toy of Massachusetts, Inc.; KB Toy of New Jersey, Inc.; KB Online Holdings LLC; BrainPlay.com, Inc.; Montgomery Toy LLC; KB Toys Wholesale, Inc.; Travel, Inc. of Pittsfield; Aguadilla Kay-Bee Toy, Inc.; Ala Moana Kay-Bee Toy, Inc.; Atocha Street Kay-Bee Toy, Inc.; Bayamon Kay-Bee Toy, Inc.; Calle Betances Kay-Bee Toy, Inc.; Carolina Kay-Bee Toy, Inc.; Centro Del Sur Kay-Bee Toy, Inc.; Cordero Ave. (Caguas) Kay-Bee Toy, Inc.; Fajardo State Rd. Kay-Bee Toy, Inc.; K B Toy of Alaska, Inc.; K B Toy of Arizona, Inc.; K B Toy of Arkansas, Inc.; K B Toy of California, Inc.; K B Toy of Colorado, Inc.; K B Toy of Connecticut, Inc.; K B Toy of Florida, Inc.; K B Toy of Hawaii, Inc.; K B Toy of Idaho, Inc.; K B Toy of Maryland, Inc.; K B Toy of Nebraska, Inc.; K B Toy of Nevada, Inc.; K B Toy of North Carolina, Inc.; K B Toy of Ohio, Inc.; K B Toy of South Dakota, Inc.; K B Toy of Tennessee, Inc.; KB Toy of Texas, Inc.; K B Toy of Utah, Inc.; K B Toy of Virginia, Inc.; K B Toy of Washington, Inc.; K B Toy of Wisconsin, Inc.; K B Toy of Wyoming, Inc.; K B Toy Distribution South, Inc.; Kay-Bee Caguas Centrum, Inc.; Kay-Bee Carolina, Inc.; Kay-Bee De Diego Street, Inc.; Kay-Bee Del Norte, Inc.; Kay-Bee Guayama, Inc.; Kay-Bee Isabela, Inc.; Kay-Bee Juncos Plaza, Inc.; Kay-Bee Manati, Inc.; Kay-Bee Palma Real, Inc.; Kay-Bee Playa Del Sol, Inc.; Kay-Bee Plaza Acquarium, Inc.; Kay-Bee Plaza Caribe, Inc.; Kay-Bee Plaza Del Atlantico, Inc.; Kay-Bee Toy & Hobby Shops, Inc.; Kay-Bee Western Plaza, Inc.; Kay-Bee Yabucoa, Inc.; Las Americas Kay-Bee Toy, Inc.; Main Street (Yauco) Kay-Bee Toy, Inc.; Mayaguez Kay-Bee Toy, Inc.; Montehiedra Kay-Bee Toy, Inc.; Pheasant Kay-Bee Toy, Inc.; Plaza Del Caribe Kay-Bee Toy, Inc.; and Rio Hondo Kay-Bee Toy, Inc.

[2] Along with this Complaint, the Debtors have filed (a) *Motion of Debtors for Preliminary Injunction Staying Prosecution of Certain Action* (the "Injunction Motion"), (b) their *Memorandum of Law in Support of Motion of Debtors for Preliminary Injunction Staying Prosecution of Certain Action* (the "Memorandum of Law"), and (c) the *Affidavit of William McMahon in Support of Motion of Debtors for Preliminary Injunction Staying Prosecution of Certain Action*.

## NATURE OF THIS ACTION

1. The Defendant in this action, Big Lots Stores, Inc. ("Big Lots" or "Defendant") is the former owner of Havens Corners Corporation ("HCC"), through which Big Lots owned the "KB Toys" toy business. In December 2000, a number of investment funds managed by Bain Capital LLC and management of the KB Toys toy business organized KB Toys, Inc. ("KBI") and KB Acquisition Corporation ("KBAC") to purchase the shares of HCC from Big Lots. In connection with KBAC's purchase of the shares of HCC, HCC issued to Big Lots an unsecured promissory note (the "Note") in the principal amount of $45 million.

2. On or about April 23, 2002, KB Holdings Inc., Bain Capital Fund VIII, LLC, BCIP Associates II, BCIP Trust Associates II, BCIP Associates II-B, Sankaty High Yield Partners II, LP, Michael Glazer, Robert Feldman and others entered into a Redemption Repurchase and Equity Restructuring Agreement pursuant to which a total of approximately $88.4 million was paid to shareholders in redemption of shares and approximately $33.7 million was paid to approximately 25 senior managers of the Debtors (the "Recapitalization Transaction").

3. Due to unprecedented competition and very disappointing operating results during the 2003 holiday selling season, and in light of the uncertainty concerning their liquidity for 2004, on January 14, 2004, the Debtors filed for protection under Chapter 11 of the Bankruptcy Code.

4. On or about February 9, 2005, Big Lots filed a complaint (the "Complaint")[3] in the Delaware Chancery Court against certain shareholders of KBI and certain current and former officers and directors of the Debtors (collectively, the "Chancery Court Defendants") asserting

---

[3] A copy of the Big Lots Complaint is attached to the *Memorandum of Law*.

claims for (i) breach of fiduciary duty by Glazer and Feldman; (ii) breach of fiduciary duty against the directors of KBI who are affiliated with Bain Capital LLC (the "Bain Directors"); (iii) aiding and abetting breach of fiduciary duty against the Bain Directors and the shareholders of KBI who are affiliated with Bain Capital LLC; (iv) fraud against Feldman; and (v) intentional interference with contractual relations against the Chancery Court Defendants. By the Complaint, Big Lots seeks to recover $52 million in damages, claimed to be due under the Note, on fraudulent conveyance and breach of fiduciary duty theories.

5. By Counts I, II and III below, the Debtors seek (a) a declaratory judgment that the claims alleged by Big Lots in the Complaint, other than Count VII (the "Estate Causes of Action"), are property of the Debtors' estates, (b) a declaratory judgment that by filing and prosecuting the Complaint, Big Lots willfully and knowingly violated the automatic stay, (c) a permanent injunction enjoining further prosecution of the Estate Causes of Action, and (d) damages for violation of the automatic stay.

6. By Count IV below, the Debtors request that the Court use its equitable powers under Section 105 of the Bankruptcy Code to enjoin further prosecution of the Complaint. To the extent that the Complaint is not fully stayed pursuant to Section 362, such a supplemental injunction is necessary and appropriate to prevent the irreparable harm that prosecution of the Complaint will cause.

7. The Chancery Court Defendants include all of the current members of the Debtors' boards of directors and their current Chief Executive Officer and the Chief Financial Officer. These individuals are leading the Debtors' operations and restructuring efforts, and the prosecution of the Complaint at this time will divert their attention and energies from the Debtors' reorganizing efforts and from running the Debtors' business, thereby disrupting the

WP3:1086482 1	62865 1001

Debtors' development of plans to bring these Chapter 11 cases to conclusion. Given all of these demands, including operating a business with over $650 million in projected annual sales, the undivided attention and efforts of the Debtors' board and management is critical to these efforts in the coming days, weeks and months.

8. The Complaint arises entirely out of transactions involving the Debtors, and will therefore inevitably involve the Debtors' management (in addition to the Chancery Court Defendants), the Debtors' professionals, and other resources of the Debtors and thereby divert such persons and resources from the Debtors' reorganization efforts.

9. In contrast, on information and belief, the Defendant will suffer no harm if they are required to wait until after confirmation of a plan to pursue the actions described in the Complaint.

10. Allowing Big Lots to prosecute the Complaint also threatens to deplete any insurance available under the Debtors' directors' and officers' liability policy. The Debtors believe that the Chancery Court Defendants will inevitably seek from that policy defense and indemnification costs incurred in connection with the Complaint. Based on the allegations in the Complaint, such indemnification costs could exceed the amount of available insurance proceeds, leaving no coverage to satisfy any claims brought *on behalf of* the estates (such as the claims the Creditors' Committee seeks to bring[4]) and no coverage to satisfy any claims brought directly against the Debtors themselves through the bankruptcy.

## PARTIES

11. Plaintiff KB Toys, Inc. ("Parent") is a Delaware corporation, and is a debtor and debtor in possession in the above captioned Chapter 11 cases with its principal place of business

---

[4] On February 11, 2005, the Creditors' Committee filed a motion [Docket No. 1984] with this Court seeking standing to pursue certain claims against current and former officers and directors of the Debtors, and have notified the Debtors of the demand for such claims in amounts not less than $121 million.

at 100 West Street, Pittsfield, Massachusetts. Each of the other Plaintiffs is a direct or indirect wholly-owned subsidiary of the Parent, and is a debtor and debtor in possession in the above-captioned Chapter 11 cases.

12. Defendant Big Lots Stores, Inc., is an Ohio corporation with its principal place of business at 300 Phillipi Road, Columbus, Ohio.

## JURISDICTION

13. This adversary proceeding arises under the Debtors' Chapter 11 cases currently pending before this Court under Title 11 of the United States Code (the "Bankruptcy Code"). The Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue of this proceeding in this district is proper under 28 U.S.C. §§ 1408 and 1409. This proceeding is brought pursuant to Rule 7001(7) and (9) of the Federal Rules of Bankruptcy Procedure.

## FACTUAL ALLEGATIONS

### Description of Debtors and Events Leading to their Bankruptcy Cases

14. On January 14, 2004 (the "Petition Date"), KB Toys, Inc., and substantially all of its direct and indirect subsidiaries, each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases"). Since the Petition Date, the Debtors have remained in possession of their properties and the management of their businesses as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Chapter 11 Cases.

15. The Debtors are headquartered in Pittsfield, Massachusetts and, as of the Petition Date, conducted business in each of the 50 states of the United States, the Commonwealth of Puerto Rico and the Territory of Guam and operated approximately 1,231 stores, a wholesale

business, and an Internet division under the names KBtoys.com and eToys.com. As of January 3, 2004, on a consolidated basis, the Debtors had total assets of approximately $507 million, total liabilities of approximately $461 million and a net stockholder's equity of approximately $46 million.

16. The toy business operated by the Debtors started in 1922 as a family owned business, and continued in that form until 1981 when the business was sold to Melville Corporation ("Melville"). Melville in turn sold the KB Toys business to Big Lots, then known as Consolidated Stores Corporation ("Consolidated") in 1996. On December 7, 2000, a corporation formed by management of the Debtors together with various investment funds managed by affiliates of Bain Capital, LLC ("Bain") and certain related entities, purchased the Debtors from Consolidated for a purchase price of approximately $300 million (the "KB Acquisition"). While Big Lots received a substantial portion of the purchase price in cash, the balance was paid by the issuance of the Note by HCC to Big Lots.

17. The Debtors' corporate organization as of the Petition Date is summarized on Exhibit A hereto. Each of KB Toys, Inc., KB Acquisition Corporation and Havens Corners Corporation is a holding company whose sole assets are the shares in its direct subsidiary. KB Toys (US), Inc., an Ohio corporation, and Southdale Kay Bee Toy, Inc. ("Southdale"), a Minnesota corporation, are also holding companies whose sole assets are the shares in their respective direct subsidiaries (except for one store operated by Southdale). Mall of America Kay Bee Toy, Inc. ("Mall of America") is a Minnesota corporation, which owns the various corporations through which the Debtors' retail, wholesale and online toy businesses are

conducted and directly owns and operates the leases and stores located in Minnesota.[5] KB Massachusetts is the principal operating company through which the Debtors' mall-based operations are conducted and which purchases substantially all of the merchandise which is sold by the Debtors.

18.  Over the past decade, from 1992 through 2001, the Debtors' averaged annual sales of approximately $1.4 billion, and earnings before interest, taxes, depreciation and amortization ("EBITDA") of approximately $80 million per year, excluding certain accounting adjustments. For the Debtors' fiscal year ended February 2, 2002, the Debtors' EBITDA was approximately $76 million, and for fiscal year ended February 1, 2003, the Debtors realized EBITDA of negative $39 million, their first loss in recent corporate history. For the fiscal year ending January 31, 2004, the Debtors' EBITDA was approximately negative $38 million.

19.  While a number of factors adversely affected the Debtors' profitability during the holiday season in 2003, the Debtors believe that the single overwhelming factor was the very aggressive price war launched by large discount department stores and their main competitor, Toys 'R Us. On January 14, 2004, the Debtors filed these Chapter 11 cases.

### Debtors' Efforts to Reorganize and Develop a Plan(s)

20.  During these Chapter 11 cases, the Debtors have sold their online business, and closed approximately 600 stores, of which approximately 549 stores were closed by court approved going out of business sales and the balance were closures in the ordinary course of business.

---

[5] Mall of America also owns, through certain indirect bankruptcy remote subsidiaries which are not debtors in these Chapter 11 cases (nor are the entities which are the direct parents of such entities), distribution centers located in Arizona and Alabama (Toys DC South LLC ("DC South")) and New Jersey (Toys DC East LLC ("DC East")). The distribution centers are leased to K B Toy of Massachusetts, Inc. ("KB Massachusetts") and KB Toy of New Jersey, Inc. ("KB New Jersey"), respectively.

7

21.     As the Debtors consolidated their operations, the Debtors also substantially reduced their annual overhead expenses from approximately $53 million to approximately $36 million. The Chancery Court Defendants, other than Robert White, and other senior management have been extensively involved in the development and implementation of the Debtors' business plan during these Chapter 11 cases. Their involvement has been critical to the Debtors' restructuring efforts.

22.     During the summer of 2004 the Debtors extensively explored the possibility of selling their business as part of a plan. The Debtors, by and through their senior management, discussed terms for sale with various interested parties and responded to the due diligence requests, but unfortunately, the Debtors were unable to agree to terms with any purchaser or plan funder. As the Debtors entered into their busy holiday season in November and December 2004, the Debtors re-focused themselves on their operations, sales and customer retention efforts and on developing a new store format and merchandising strategy for 2005.

23.     To assist the Debtors to develop a new store format and merchandise strategy, the Debtors and the Creditors' Committee retained Retail Forward, Inc., a strategic retail consulting firm ("RFI"). With RFI's assistance, the Debtors' senior management developed a new store format, merchandising strategy and operations plan which the Debtors are beginning to implement. Successful implementation of these new strategies requires the undivided attention of the Debtors' management.

24.     The Debtors have also resumed plan negotiations with a potential purchaser of the Debtors through a plan of reorganization, continue to pursue and provide diligence to possible purchasers of some or all of the Debtors' assets, and are negotiating revised financing terms to

improve the Debtors' liquidity outlook for 2005. All of these activities also require the substantial attention of the Debtors' board of directors and senior management.

### Information Provided to Committee

25. In addition to working closely with the Creditors' Committee to return the Debtors' operations to profitability and to develop a plan of reorganization, the Debtors have provided over 100,000 pages of documents to the Creditors' Committee relating to the Recapitalization Transaction. As the Debtors and the Creditors' Committee have diligently pursued reorganization efforts, neither has previously moved to file any actions regarding the Recapitalization Transaction or other avoidance claims in order to avoid the harmful effects that the Debtors believe such steps would have on these Chapter 11 cases at this time.

### Big Lots' Complaint

26. On February 9, 2005, however, the Defendant filed the Complaint. The Complaint alleges various claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, fraud and civil conspiracy based on actions taken by the Defendants in connection with the Recapitalization Transaction.

27. Each of the Estate Causes of Action is in essence a claim that either the Chancery Court Defendants breached a fiduciary duty to the Debtors, aided the breach of such a duty or received a fraudulent conveyance or an improper dividend.

28. The Estate Causes of Action are derivative claims that belong to the Debtors.

29. The harm that Big Lots claims in the Complaint is harm to the Debtors, not harm that is particular to Big Lots.

30. Although stated in different words, the wrong asserted in the Complaint is that the payments made by the Debtors to the Chancery Court Defendants were fraudulent transfers. Such claims are assets of the Debtors' estates.

31. By filing and prosecuting the Complaint, Big Lots has knowingly and willfully violated the automatic stay.

### Harm to Reorganization

32. The Debtors' board of directors and management (including the Chancery Court Defendants other than Mr. White), and in particular Messrs. Glazer and Feldman, are actively involved in the Debtors' restructuring initiatives described above as well as in operating the Debtors' business on a day to day basis. The Debtors' officers and directors are currently spending nearly all of their time and efforts developing business and financial plans, engaging in discussions with the Creditors' Committee and possible plan funders, and evaluating the possibility of a plan of reorganization or other bankruptcy alternatives which are in the best interests of the Debtors and the creditors. Achieving these goals is and will continue to consume substantially all of management's time and resources.

33. If the Complaint were to proceed, Messrs. Feldman and Glazer would be involved in defending the Complaint, and would not be able to focus their attentions on restructuring and operating the Debtors. Based on the allegations in the Complaint, the Debtors expect that substantially all of the discovery sought from the Defendants in connection with the Complaint will involve documents and information in the Debtors' possession, custody and control. Accordingly, the Debtors' current officers, directors and in-house legal staff would likely have to devote significant time to Complaint-related matters, including such matters as possibly preparing for and appearing at depositions, answering interrogatories, and responding to

voluminous document requests. Likewise, the Debtors believe that the majority of potential fact witnesses are likely to be current or former employees of the Debtors, including those who will be focused on and needed for the Debtors' reorganization. As a result of the very substantial overhead reductions, the Debtors are not able to respond to such substantial litigation demands without compromising the Debtors' reorganization efforts. Such diversion of their attention would irreparably harm the Debtors.

34. Even where depositions are taken of former employees, the Debtors' privileged and proprietary information would be at risk and current employees and professionals would have to become involved to protect such information. As a result, absent a stay of the Complaint, the Debtors' current officers, directors, and in-house legal personnel will be forced to shift much of their focus from the reorganization efforts to peripheral litigation.

35. Of the Defendants who are individuals, all but Mr. White have a significant role in the Debtors' reorganization. If forced to defend the Complaint against them, the individuals will not be able to devote adequate time and resources to the Debtors' reorganization.

36. All of these burdens on the Debtors would substantially interfere with the Debtors' reorganization.

### Threat to Debtors' Insurance – An Asset of the Estates

37. The Debtors and their officers and directors are insureds under a Directors, Officers and Private Company Liability Insurance Policy issued by AIG (the "D&O Policy").

38. The proceeds of the D&O Policy are an asset of the Debtors' estates.

39. The Creditors' Committee has already spent over $1.0 million investigating claims that the Debtors' estates may have arising out of the Recapitalization Transaction.

11

40. Upon information and belief, promptly following receipt of a copy of the Complaint, the Creditors' Committee sent a letter to the Debtors asserting claim for damages arising out of the Recapitalization Transaction in an unliquidated amount equal to not less than $121 million. Such letter requested that the former and current officers and directors of the Debtors furnish notice of the claims to the insurance carrier for the Debtors' D&O Policy.

41. The Creditors' Committee also thereafter filed a *Motion for an Order Authorizing and Appointing the Committee to Commence and Prosecute Claims Against Insiders* [Docket No. 1984], that the Debtors' estates have claims against the Chancery Court Defendants and other former and current officers and directors, and further requests authorization for the Creditors' Committee to commence and prosecute such actions. If such claims are brought, there is no assurance that the proceeds of the D&O Policy would be sufficient to satisfy such claims as well as the claims asserted by Big Lots in the Complaint. Any depletion of the D&O Policy proceeds on account of the Complaint would diminish proceeds available to other creditors of the Debtors.

42. On information and belief, by virtue of applicable state statutes, common law, the Debtors' by-laws, and various employment agreements, the Debtors may be required to provide the individual Chancery Court Defendants with full indemnification for losses and/or defense costs in connection with the Complaint or any other action based on the Recapitalization Transaction. The prosecution of such claims could therefore, on information and belief, result in the assertion of substantial indemnification claims against the Debtors.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
(Declaratory judgment that claims asserted in Big Lots' Complaint
are property of the Debtors'-- 11 U.S.C. §541)

43. Plaintiffs hereby reallege and incorporate herein by reference Paragraphs 1 – 42 of this Complaint.

44. Each of the Estate Causes of Action is a claim for either breach of fiduciary duty, fraudulent conveyance, or aiding and abetting a breach of fiduciary duty or fraudulent conveyance.

45. The Estate Causes of Action are property of the Debtors' estates.

46. The Debtors are entitled to a declaratory judgment that the causes of action asserted in the Complaint are property of their estates pursuant to 11 U.S.C. § 541.

### SECOND CAUSE OF ACTION
(Declaratory judgment that filing the Complaint and prosecuting
the claims therein is a violation of automatic stay – 11 U.S.C. §362)

47. Plaintiffs hereby reallege and incorporate herein by reference Paragraphs 1 – 46 of this Complaint.

48. The Estate Causes of Action are property of the Debtors' estates.

49. Proceeds of the Debtors' D&O Policy is property of the Debtors' estates.

50. Continued prosecution of the Complaint will deplete insurance coverages for the Debtors' estates through payment of the defense and indemnification costs of the Chancery Court Defendants.

51. By filing and prosecuting the claims under the Complaint, Big Lots has knowingly and willfully attempted to obtain possession of property of the Debtors' estates or of property from the Debtors' estates or to exercise control over property of the Debtors' estates.

52.   Section 362(a)(3) of the Bankruptcy Code prohibits any attempt to obtain possession of property of the Debtors' estates, or of property from the Debtors' estates, or to exercise control over property of the Debtors' estates.

53.   Big Lots has violated 11 U.S.C. § 362, and as a result has caused irreparable harm to the Debtors.

### THIRD CAUSE OF ACTION
(Permanent injunction barring Big Lots
from prosecuting its Complaint – 11 U.S.C. §§105(a), 362)

54.   Plaintiffs hereby reallege and incorporate herein by reference Paragraphs 1 – 53 of this Complaint.

55.   The Estate Causes of Action are property of the Debtors' estates.

56.   The Debtors and their estates will suffer irreparable harm if the Defendants are permitted to continue to prosecute the Estate Causes of Action.

57.   Defendant will not suffer any harm if it is prohibited from prosecuting claims it does not own.

58.   Issuance of the injunction is in the public interest as it furthers the purposes of Section 362 of the Bankruptcy Code and the public policy favoring equitable distributions to creditors.

59.   The Debtors have no adequate remedy at law.

### FOURTH CAUSE OF ACTION
(Injunction Barring Big Lots From Prosecuting Complaint Pursuant to Section 105 of the Bankruptcy Code)

60.   Plaintiffs hereby reallege and incorporate herein by reference Paragraphs 1 – 59 of this Complaint.

61. The Chancery Court Defendants who are officers and directors of the Debtors are of critical importance to the successful reorganization of the Debtors.

62. Prosecution of the Complaint will distract the Debtors' officers and directors, including one or more of the Chancery Court Defendants, from the management of the Debtors' business and the Debtors' reorganization, thereby irreparably harming the Debtors.

63. Prosecution of the Complaint will deplete the Debtors' assets that are otherwise available to all creditors as a result of claims against the D&O Policy that will result from prosecution of the Complaint.

64. Prosecution of the Complaint exposes the Debtors to claims for indemnification.

65. Judicial rulings made in connection with the Complaint could have collateral estoppel effect against the Debtors, thereby requiring the Debtors to participate in litigation of the Complaint as if it were a named party.

66. The Debtors will be irreparably harmed if the actions under the Complaint are allowed to proceed and are not enjoined.

67. Defendant will not suffer harm if it is prohibited from prosecuting the Complaint prior to completion of the Debtors' Chapter 11 cases.

68. Issuance of the injunction is in the public interest as it furthers the overreaching goal of Chapter 11 to reorganize.

69. The Debtors' have no adequate remedy at law.

### FIFTH CAUSE OF ACTION
(Costs and Expenses for Willfully Violating the Automatic Stay)

70. Plaintiffs hereby reallege and incorporate herein by reference Paragraphs 1 – 69 of this Complaint.

71. Big Lots has willfully and knowingly violated the automatic stay by filing and prosecuting the Complaint.

72. As a result of such violation of the automatic stay by Big Lots, the Debtors have incurred, and continue to incur, actual costs and attorneys' fees.

73. The Debtors are entitled to recover from Big Lots such actual costs and attorneys' fees, including punitive damages if the Court so determines.

**WHEREFORE**, the Debtors respectfully request that the Court enter judgment in its favor and against Defendant, and grant Debtors the following relief:

    A. Declare that the Estate Causes of Action are property of the Debtors' estates;

    B. Declare that the filing and continued prosecution of the Complaint and claims alleged therein is a violation of Section 362 of the Bankruptcy Code;

    C. Award damages against Big Lots for violation of Section 362 of the Bankruptcy Code, as found by the Bankruptcy Court;

    D. Permanently enjoin Big Lots from prosecuting the Estate Causes of Action, or any other claims against any current or former shareholder, director, officer or employee of the Debtors related to the Recapitalization Transaction;

    E. Enjoin prosecution of the Complaint pursuant to Section 105 of the Bankruptcy Code until the Debtors Chapter 11 plan of reorganization has been confirmed; and

F. Grant such other and further relief as the Court determines is just and appropriate.

DATED: February 18, 2005

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Joel A. Waite

Joel A. Waite (No. 2925)
M. Blake Cleary (No. 3614)
Matthew B. Lunn (No. 4119)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Tel: (302) 571-6600
Fax: (302) 571-1253

- and --

WILMER CUTLER PICKERING
 HALE AND DORR LLP
Mark N. Polebaum (BBO #402060)
Mitchel Appelbaum (BBO #558579)
60 State Street
Boston, MA 02109
Tel: (617) 526-6000
Fax: (617) 526-5000


Co-counsel for the Debtors and Debtors in Possession

**Exhibit "A"**

**See attached Chart**



## VERIFICATION

I, William McMahon, state that I am the Chief Operating Officer of KB Toys, Inc., and that I have the authority to make this Verification on behalf of the Plaintiffs. I verify under penalties of perjury under the law of the United States of America that the statements set forth I the foregoing *Verified Complaint For Declaratory And Injunctive Relief* are true and correct to the best of my knowledge and are based on the information presently available to Plaintiffs.

_____
William McMahon