## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| KB Toys, Inc., *et al.*, ) | Case No. 04-10120 (DDS) |
| ) | (Jointly Administered) |
| Debtors. ) | |
| ) | |
| ) | |
| KB TOYS, INC. et al., ) | |
| ) | Adv Proc No. 05-50475 (DDS) |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| BIG LOTS STORES, INC. ) | **Hearing Date: March 3, 2005 at 1:00 p.m.** |
| ) | **Re: Docket No. 4** |
| Defendant. ) | |
| ) | |

## RESPONSE AND JOINDER OF THE OFFICAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR PRELIMINARY INJUNCTION STAYING PROSECUTION OF CERTAIN CLAIMS [Docket No. 4]

The Official Committee of Unsecured Creditors ("Committee"), by its undersigned

counsel, for its Response and Joinder to Debtors' Motion for Preliminary Injunction Staying

Prosecution of Certain Claims (the "Injunction Motion"), respectfully represents as follows:

### INTRODUCTION

1. As explained below, the Committee concurs with the Debtors that most of the

claims raised by Big Lots are uniquely and solely "derivative" claims, available for the benefit of

the estates of all of the Debtors herein, not just one individual creditor. Also, the Committee is

mindful of the critical juncture of the cases and the concomitant challenges at hand in

effectuating a restructuring. Therefore, the Committee further concurs with the Debtors that in

order to prevent the distraction of directors, management and the Debtors key personnel during

this critical time, the Court should extend, under section 105 the automatic stay to preclude the

Big Lots Action from continuing at this time. Balancing the harms to the estates versus the harm to Big Lots, an injunction is warranted.

2.     The Committee supports the Injunction Motion. However, the Committee's support of the Injunction Motion should not be construed and is not intended as an assent to, or admission of, any of the factual allegations and/or legal conclusions asserted by the Debtors in their Verified Complaint For Declaratory And Injunctive Relief (the "Adversary Proceeding") or by Mr. William McMahon in his affidavit in support of the Injunction Motion (the "McMahon Affidavit"), with respect to the merits of certain of the causes of action asserted by Big Lots. By way of example, the Debtors allege that the single overwhelming factor that affected their profitability during the 2003 holiday season was "an aggressive price war" by the large discount stores (Adversary Proceeding, ¶ 19; McMahon Affidavit, ¶ 9). The Committee strongly disputes that allegation (amongst others) and believes that the Redemption Transaction (defined below) was "the" factor that caused the Debtors' insolvency.

3.     The Committee firmly believes that meritorious estate derivative actions do exist against certain officers, directors and other third parties named in the Big Lots Complaint arising from the Redemption Transaction, and has filed the Committee Standing Motion (defined below) for authority to prosecute same. However, since the Court is not now being asked to determine the merits of any of these potential actions or to determine the veracity of all of the factual allegations set forth in the Debtors' Adversary Proceeding and the McMahon Affidavit, the Committee will not now identify each such factual allegation it disputes or expose each of the conclusions of law it believes are erroneous. The Committee will, however, file a motion to intervene in the Adversary Proceeding to ensure that its causes of action are not negatively

2

impacted by the Adversary Proceeding, McMahon Affidavit, Big Lots' responses thereto and/or the Big Lots Complaint itself.

4.      The Committee has conducted an intensive investigation into potential claims arising under the Debtors April 23, 2002 redemption transaction (the "Redemption Transaction"). Since the summer of 2004, the Committee has had meetings with the Debtors and certain members of the Board of Directors and their counsel concerning the results of the Committee's investigation. The Committee has advised these parties that it believes it has claims against several officers, directors and shareholders of the Debtors for, *inter alia*, breach of fiduciary duty, fraudulent conveyance, improper dividend and redemptions under Delaware state law, and related claims resulting from the Redemption Transaction.

5.      The Committee maintains that (a) the Debtors' are hopelessly conflicted and unable to prosecute these claims arising from the Redemption Transaction and (b) these claims are claims of these estates prosecutable only on behalf of the Debtors. The Committee has refrained from prosecuting these claims while its restructuring and plan negotiations proceeded and while it continued to evaluate the Debtors' operational progress.

## BACKGROUND

6.      On or around February 9, 2005, Big Lots filed its complaint in the Delaware Chancery Court, asserting claims for, *inter alia,* (i) breach of fiduciary duty against Michael Glazer (KB's President and CEO) and Robert Feldman (KB's CFO) (ii) breach of fiduciary duty against various directors who are affiliated with Bain (iii) aiding and abetting breach of fiduciary duty against the Bain directors and shareholder affiliated with Bain (i.e. the Bain funds who together are KB's controlling shareholder) (iv) fraud against Mr. Feldman (v) intentional

interference with contract and (vi) fraud against Mr. Glazer in his capacity as a director of Big

Lots (the "Big Lots Complaint").

7.      In immediate response to the Big Lots Complaint, the Debtors filed the Adversary

Proceeding [Docket No. 2017] and the Injunction Motion.   The Injunction Motion seeks, *inter*

*alia*, (i) to obtain a preliminary injunction enjoining Big Lots from prosecuting its action and (ii)

under section 105 of the Bankruptcy Code to extend the automatic stay to the Debtors' officers,

directors and shareholders who are defendants to the Big Lots Complaint and/or otherwise

essential for the reorganization efforts.

8.      The Committee has filed a Motion for Order Authorizing and Appointing the

Committee to Commence and Prosecute Actions Against Insiders (the "Committee Standing

Motion")[ Docket No. 1984].  The Committee has undertaken an exhaustive analysis of the

Redemption Transaction and is prepared to prosecute its claims, when the defense of the

Committee's case will not distract management and/or cause harm to the Debtors' reorganization

efforts.

## JOINDER

9.      Based upon the foregoing and the reasons set forth below, the Committee joins in

the Injunction Motion.

### The Big Lots Complaint Claims are Derivative Claims

10.     In recognition that Big Lots' claims are structurally subordinated to the claims of

the other creditors in this case, Big Lots seeks to catapult itself ahead of the estates' other

creditors, and arrogate for itself claims which rightfully belong to the community of creditors.

11.    Virtually **all** of the Debtors were involved in the Redemption Transaction, and the entire business enterprise of the Debtors was harmed thereby.[1] Under Delaware law (and that of many other jurisdictions as well), it is now recognized that the directors and officers of corporations insolvent and in the zone of insolvency owe a fiduciary duty to creditors. See, e.g. In re Hechinger Inv. Co., 274 B.R. 71, 89 (D.Del. 2002) (directors owe a fiduciary duty to creditors once the company enters the zone of insolvency "because when the corporation enters the zone of insolvency, the creditors--and not just the shareholders- are residual risk bearers whose recovery is dependent upon business decisions of the directors.").

12.    Under Delaware law, there is now a new and simplified test for determining whether claims are direct or derivative. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 ( Del.Sup.Ct.) April 2, 2004)( C.J. Veasey). In *Tooley,* the Court held as follows.

> The analysis must be based solely on the following questions: Who suffered the alleged harm – the corporation or the suing stockholder individually – and who would receive the benefit of the recovery or other remedy?
>
> *        *        *
>
> … the inquiry should be whether the stockholder has demonstrated that he or she has suffered an injury that is not dependent on an injury to the corporation….. 'Looking at the body of the complaint and considering the nature of the wrong alleged and the relief requested, has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation."
> 845 A.2d at1036-36; *see also, In re Syncor International Corp. Shareholders Litigation*, 857 A.2d 994 (Del.Ch.Ct. September 16, 2004); *FS Parallel Fund L.P. v. Ergen*, 2004 WL 3048751 (Del.Ch.Ct. Nov. 3, 2004);

---

[1] Big Lots difficulty in dealing with this point is evident from the Big Lots Complaint itself. Count II alleges that the Bain defendants, who were not management, directors or shareholders of HCC had and breached a fiduciary duty to Big Lots by being directors of KB Holdings, which gave them "the power directly or indirectly, to control the affairs of HCC and the Operating Subsidiaries" (Big Lots Complaint, ¶ 52). Count III alleges that the Bain Defendants were the controlling shareholders of KB Holdings "the ultimate parent of HCC and the Operating Subsidiaries" which gave them control over HCC. With this control, the Bain Defendants entered into the Redemption Transaction which rendered HCC insolvent (Big Lots Complaint, ¶¶ 59-62). This created the purported fiduciary duty of the Bain Defendants to Big Lots, despite the fact that the Bain Defendants are neither officers or directors of HCC the obligor on the Big Lots note.

RLF1-2845602-1

13.     Based upon the *Tooley* standard, Big Lots' claims are clearly derivative. The Redemption Transaction rendered each of the Debtors, including HCC, insolvent. This central and fundamental harm alleged in the Big Lots Complaint is a harm to the Debtor corporations. Moreover, there is no harm to Big Lots without the harm to all of the other debtor corporations. Accordingly, the claims arising out of the Redemption Transaction are derivative estate claims, which, as is amply set forth in the Motion, renders the Big Lots Complaint a violation of the automatic stay.

## The Section 105 Injunctions are Appropriate

14.     As mentioned above, the Debtors are at the precipice in these cases. The next few weeks to months will likely determine the outcome of these cases. Given the extremely important stage of the cases, the section 105 injunction is appropriate at this point in time.[2]

15.     The Debtors cite several cases which support the proposition that a section 105 injunction can extend the automatic stay where doing so, *inter alia*, (i) will prevent distraction of the debtor and its officers during the reorganization efforts (ii) where the debtor is the real party in interest, who will suffer harm if the third party lawsuit is permitted to continue.

16.     During this phase of these cases, the Committee believes that the Big Lots lawsuit would disrupt the Debtors' business and distract the officers and directors from what is most important at this time, determining whether a reorganization can be effectuated and the business saved. Even the potential for any harm to the reorganization process militates in favor of the preliminary injunction.

---

[2] The Committee's joinder in extending the stay as to Big Lots Action is not inconsistent with the Committee Standing Motion. Assuming the Court approves the Committee Standing Motion, the Committee will not commence its lawsuit until such time as the Debtors reorganization prospects are determined and the critical period has passed. Notwithstanding, obtaining Committee standing is required and necessary, as soon as possible since the resolution of a number issues depend on the Committee obtaining standing

RLF1-2845602-1

17.    The estates will suffer likely irreparable harm if the business is interrupted and the attention of key personnel (including the defendants in the Big Lots Complaint) is diverted and distracted by virtue of the vagaries of litigation. Conversely, Big Lots will suffer little to no harm if required to temporarily "freeze" its lawsuit.

## CONCLUSION

For all of the above-stated reasons, the Committee respectfully requests that the Court grant the Injunction Motion in all respects.

Dated:    February 25, 2005
          Wilmington, Delaware

                                        Respectfully submitted,

                                        *Kimberly D. Newmarch*
                                        RICHARDS, LAYTON & FINGER, P.A.
                                        Mark D. Collins (DE 2981)
                                        John H. Knight (DE 3848)
                                        Kimberly D. Newmarch (DE 4340)
                                        One Rodney Square
                                        P.O. Box 551
                                        Wilmington, Delaware  19899
                                        Telephone: (302) 651-7700
                                        Facsimile: (302) 651-7701

                                          -and-

                                        TRAUB, BONACQUIST & FOX LLP
                                        Paul Traub (PT 3752)
                                        Michael S. Fox (MF 2612)
                                        Maura I. Russell (MR 1178)
                                        655 Third Avenue – 21st Floor
                                        New York, NY  10017
                                        Telephone: (212) 476-4770

                                        Co-Counsel to the Committee

7

RLF1-2845602-1