**Exhibit A**

Directors, Officers and Private Company
Liability Insurance Policy

(excerpts)

**AIG** AMERICAN INTERNATIONAL COMPANIES®

# DIRECTORS, OFFICERS AND PRIVATE COMPANY LIABILITY INSURANCE POLICY
## Including Employment Practices and Securities Liability

### *PrivateEdge*℠

- ☐ AIU Insurance Company
- ☐ American Home Assurance Company
- ☐ American International Pacific Insurance Company
- ☐ American International South Insurance Company
- ☐ Birmingham Fire Insurance Company of Pennsylvania

- ☐ Granite State Insurance Company
- ☐ Illinois National Insurance Company
- ☑ National Union Fire Insurance Company of Pittsburgh, Pa.
- ☐ National Union Fire Insurance Company of Louisiana
- ☐ New Hampshire Insurance Company

(each of the above being a capital stock company)

POLICY NUMBER: *937-81-42*                RENEWAL OF: *353-09-27*

---

NOTICE: EXCEPT TO SUCH EXTENT AS MAY OTHERWISE BE PROVIDED HEREIN, THE COVERAGE OF THIS POLICY IS GENERALLY LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND REPORTED IN WRITING TO THE INSURER PURSUANT TO THE TERMS HEREIN. PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE THEREUNDER WITH YOUR INSURANCE AGENT OR BROKER.

NOTICE: THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS SHALL BE REDUCED BY AMOUNTS INCURRED FOR LEGAL DEFENSE. AMOUNTS INCURRED FOR LEGAL DEFENSE SHALL BE APPLIED AGAINST THE RETENTION AMOUNT.

NOTICE: THE INSURER DOES NOT ASSUME ANY DUTY TO DEFEND. HOWEVER THE INSUREDS MAY UNDER CERTAIN CONDITIONS TENDER THE DEFENSE OF A CLAIM. IN ALL EVENTS, THE INSURER MUST ADVANCE DEFENSE COSTS PAYMENTS PURSUANT TO THE TERMS HEREIN PRIOR TO THE FINAL DISPOSITION OF A CLAIM.

### DECLARATIONS

ITEM 1.  NAMED ENTITY:     *See Endorsement #1 - PROGRAM PARTICIPANTS AND LIMITS OF LIABILITY ENDORSEMENT*

MAILING ADDRESS:     *111 HUNTINGTON AVENUE BOSTON, MA 02199*

STATE OF INCORPORATION OR STATE OF FORMATION OF THE NAMED ENTITY:     *Delaware*

68461 (8/97)

CONFIDENTIAL
KB 032426

ITEM 2.    SUBSIDIARY COVERAGE:  any past, present or future Subsidiary of the Named Entity

ITEM 3.    POLICY PERIOD:    From: *February 28, 2004*  To:    *February 28, 2005* (12:01 A.M. standard time at the address stated in Item 1.)

ITEM 4.    LIMIT OF LIABILITY:                          See Endorsement #1

ITEM 5.    RETENTION:                                 See Endorsement #1

Judgments, Settlements and
Defense Costs (non-Indemnifiable Loss)        None

Employment Practices Claims
Judgments, Settlements and Defense
Costs (Company and Indemnifiable Loss)        See Endorsement #1

Securities Claims (other than private placements)
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)              See Endorsement #1

All Other Claims (including private placements)
Judgments, Settlements and Defense Costs
(Company and Indemnifiable Loss)              See Endorsement #1

ITEM 6.    CONTINUITY DATES:

A.      Coverages A and B(ii):              See Endorsement #1

B.      Coverage B(i):                      See Endorsement #1

C.      Outside Entity Coverage:
        Per Outside Entity,                 See Endorsement #1

ITEM 7.    PREMIUM:        REDACTED

*Premium for Certified Acts of Terrorism Coverage under Terrorism Risk Insurance Act 2002:* `` `` *included in policy premium.*
*Any coverage provided for losses caused by an act of terrorism as defined by TRIA (TRIA Losses) may be partially reimbursed by the United States under a formula established by TRIA as follows: 90% of TRIA Losses in excess of the insurer deductible mandated by TRIA, the deductible to be based on a percentage of the insurer's direct earned premiums for the year preceding the act of terrorism.*
*A copy of the TRIA disclosure sent with the original quote is attached hereto*

68461 (8/97)

CONFIDENTIAL
KB 032427

ADDITIONAL PREMIUM FOR PUNITIVE, EXEMPLARY AND MULTIPLIED DAMAGES: (included in above) (No punitive damages coverage provided: REDACTED

ITEM 8.    NAME AND ADDRESS OF INSURER (hereinafter "Insurer"):
(This policy is issued only by the insurance company indicated below.)

National Union Fire Insurance Company of Pittsburgh, Pa.
175 Water Street
New York, New York 10005

**IN WITNESS WHEREOF,** the Insurer has caused this policy to be signed on the Declarations Page by its President, a Secretary and a duly authorized representative of the Insurer.

_____
PRESIDENT

_____
SECRETARY

_____
AUTHORIZED REPRESENTATIVE

_____
COUNTERSIGNATURE DATE

_____
COUNTERSIGNED AT

MARSH USA INC
1166 AVENUE OF THE AMERICAS
NEW YORK, NY 10036

68461 (8/97)

CONFIDENTIAL
KB 032428

POLICYHOLDER DISCLOSURE STATEMENT
UNDER
TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that under the federal Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, you now have a right to purchase insurance coverage for losses arising out of an Act of Terrorism, which is defined in the Act as an act certified by the Secretary of the Treasury (i) to be an act of terrorism, (ii) to be a violent act or an act that is dangerous to (A) human life; (B) property or (C) infrastructure, (iii) to have resulted in damage within the United States, or outside of the United States in case of an air carrier or vessel or the premises of a U.S. mission and (iv) to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. You should read the Act for a complete description of its coverage. The Secretary's decision to certify or not to certify an event as an Act of Terrorism and thus covered by this law is final and not subject to review. There is a $100 billion dollar annual cap on all losses resulting from Acts of Terrorism above which no coverage will be provided under this policy and under the Act unless Congress makes some other determination.

For your information, coverage provided by this policy for losses caused by an Act of Terrorism may be partially reimbursed by the United States under a formula established by the Act. Under this formula the United States pays 90% of terrorism losses covered by this law exceeding a statutorily established deductible that must be met by the insurer, and which deductible is based on a percentage of the insurer's direct earned premiums for the year preceding the Act of Terrorism.

Unless you sign this form and return it to us rejecting Terrorism Coverage under the Federal Act, you will be covered for Terrorism as defined in the Act and your premium for that coverage is _____ REDACTED

_____ I hereby reject coverage in accordance with the Act.

_____
Signature of Insured

_____
Print Name/Title

_____
Date

COPY OF DISCLOSURE SENT WITH ORIGINAL QUOTE

| Insured Name : *See Endorsement #1 – PROGRAM PARTICIPANTS AND LIMITS OF LIABILITY ENDORSEMENT* |
| Policy Number : *937-81-42* |
| Policy Period Effective Date From: *February 28, 2004*   To: *Februrary 28, 2005* |

81285 (1/03)

CONFIDENTIAL
KB 032429

# **AIG** AMERICAN INTERNATIONAL COMPANIES®

### DIRECTORS, OFFICERS AND PRIVATE COMPANY LIABILITY INSURANCE POLICY
### Including Employment Practices and Securities Liability

*PrivateEdge*<sup>SM</sup>

In consideration of the payment of the premium, and in reliance upon the statements made to the Insurer by application forming a part hereof and its attachments and the material incorporated therein, the insurance company designated in Item 8 of the Declarations, herein called the Insurer, agrees as follows:

## 1.   INSURING AGREEMENTS

### COVERAGE A: INDIVIDUAL INSURED INSURANCE

This policy shall pay the Loss of each and every Director, Officer or Employee of the Company arising from a Claim first made against such Insureds during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act in their respective capacities as Directors, Officers or Employees of the Company  except when and to the extent that the Company  has indemnified  such Insureds.  The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

### COVERAGE B: PRIVATE COMPANY INSURANCE

This policy shall pay the Loss of the Company arising from a:

  (i)   Claim first made against the Company, or

  (ii)  Claim first made against an Individual Insured,

during the Policy Period or the Discovery Period (if applicable) and reported to the Insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act, but, in the case of (ii) above, only when and to the extent that the Company has indemnified the Individual for such Loss pursuant to law, common or statutory, or contract, or the Charter or By-laws of the Company duly effective under such law which  determines and defines such rights of indemnity. The Insurer shall, in accordance with and subject to Clause 8, advance Defense Costs of such Claim prior to its final disposition.

68462 (8/97)                                                    1

CONFIDENTIAL
KB 032430

DEFENSE PROVISIONS

The Insurer does not assume any duty to defend, provided, however, the Named Entity may at its sole option tender to the Insurer the defense of a Claim for which coverage is provided by this policy to the Insurer in accordance with Clause 8 of the policy. Regardless of whether the defense is so tendered, the Insurer shall advance Defense Costs (excess of the applicable retention amount) of such Claim prior to its final disposition. Selection of counsel to defend a "Designated Claim" shall be made in accordance with Clause 9 of the policy.

2.  DEFINITIONS

(a)  "Affiliate" means: (i) any person or entity that directly, or indirectly through one or more intermediaries, controls or is controlled by, or is in common control with, another person or entity; or (ii) any person or entity that directly, or indirectly through one or more intermediaries, is a successor in interest to another person or entity.

(b)  "Claim" means:

(1)  a written demand for monetary or non-monetary relief (including any request to toll or waive any statute of limitations); or

(2)  a civil, criminal, administrative, regulatory or arbitration proceeding for monetary or non-monetary relief which is commenced by:

(i)  service of a complaint or similar pleading; or

(ii)  return of an indictment (in the case of a criminal proceeding); or

(iii)  receipt or filing of a notice of charges.

(3)  an administrative or regulatory investigation when conducted by the Equal Employment Opportunity Commission ("EEOC") (or similar state, local or foreign agency) which is commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to the Insured. However, in no event shall the term "Claim" include any labor or grievance proceeding which is subject to a collective bargaining agreement.

The term "Claim" shall include an Employment Practices Claim and a Securities Claim.

(c)  "Company" means the Named Entity and any Subsidiary thereof.

(d)  "Continuity Date" means the date set forth in:

68462 (8/97)                                   2                          CONFIDENTIAL
KB 032431

(1) Item 6A of the Declarations with respect to Coverages A and B(ii); or

(2) Item 6B of the Declarations with respect to Coverage B(i);

(3) Item 6C of the Declarations with respect to a Claim made against an Individual Insured(s) arising out of such Insured's service as a director, officer, trustee or governor of an Outside Entity.

(e)  "Defense Costs" means reasonable and necessary fees, costs and expenses consented to by the Insurer (including premiums for any appeal bond, attachment bond or similar bond, but without any obligation to apply for or furnish any such bond) resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insureds, but excluding salaries of officers or Employees of the Company.

(f)  "Employee(s)" means any past, present or future employee, whether such employee is in a supervisory, co-worker or subordinate position or otherwise, including any part-time, seasonal and temporary employee in his or her capacity as such. An individual who is leased to the Company shall also be an Employee, but only if the Company provides indemnification to such leased individual in the same manner as is provided to the Company's employees. Any other individual who is contracted to perform work for the Company, or who is an independent contractor for the Company shall also be an Employee, but only if the Company provides indemnification to such individual in the same manner as that provided to the Company's employees, and such individual is scheduled by written endorsement attached hereto and the Company pays any additional premium required by the Insurer relating to such individual.

(g)  "Employment Practices Claim" means a Claim alleging an Employment Practices Violation.

(h)  "Employment Practices Violation(s)" means any actual or alleged:

(1)  wrongful dismissal, discharge or termination (either actual or constructive) of employment, including breach of an implied contract;

(2)  harassment (including sexual harassment whether "quid pro quo", hostile work environment or otherwise);

(3)  discrimination, (including but not limited to discrimination based upon age, gender, race, color, national origin, religion, sexual orientation or preference, pregnancy, or disability);

(4)  Retaliation (including lockouts);

68462 (8/97)                        3                        CONFIDENTIAL
                                                             KB 032432

(5)    employment-related misrepresentation(s) to an Employee or applicant for employment with the Company;

(6)    employment-related libel, slander, humiliation, defamation, invasion of privacy;

(7)    wrongful failure to employ or promote;

(8)    wrongful deprivation of career opportunity, wrongful demotion or negligent employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference;

(9)    wrongful discipline;

(10)   failure to grant tenure;

(11)   failure to provide or enforce adequate or consistent corporate policies and procedure relating to any Employment Practices Violation;

(12)   violation of an individual's civil rights relating to any of the above,

but only if the Employment Practices Violation relates to an Employee(s), or applicant for employment with the Company or an Outside Entity, whether direct, indirect, intentional or unintentional.

With respect to any customer or client of the Company, whether individually or as a class or group, Employment Practices Violation shall mean only any actual or alleged discrimination, sexual harassment or violation of an individual's civil rights relating to such discrimination or sexual harassment, whether direct, indirect, intentional or unintentional.

(i)    "Individual Insured(s)" means:

(1)    any past, present or future duly elected or appointed directors, officers, management committee members or members of the Board of Managers of the Company, but only in their capacities as such. Coverage will automatically apply to all new directors, officers, management committee members or members of the Board of Managers of the Company after the inception date of this policy;

(2)    any past, present or future duly elected or appointed directors, officers, management committee members or members of the Board of Managers of the Company serving in the capacity as director, officer, trustee or governor of an Outside Entity, but only if such service is at the specific written request or direction of the Company;

68462 (8/97)                                4                          CONFIDENTIAL
                                                                      KB 032433

(3) in the event the Company operates outside the United States, then the terms director, officer, management committee member or member of the Board of Managers shall also mean those titles, positions or capacities in such foreign Company which are equivalent to such positions in an organization incorporated or formed within the United States; and

(4) any Employee(s) of the Company.

(j) "Insured(s)" means:

(1) an Individual Insured; and

(2) the Company.

(k) "Loss" means damages (including back pay and front pay), judgments, settlements, pre- and post-judgment interest, and Defense Costs; however, Loss shall not include: (1) civil or criminal fines or penalties imposed by law; (2) taxes; (3) any amount for which the Insureds are not financially liable or which are without legal recourse to the Insureds; (4) employment-related benefits, stock options, perquisites, deferred compensation or any other type of compensation other than salary, wages or bonus compensation; (5) any liability or costs incurred by any Insured to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person, or any liability or costs incurred in connection with any educational, sensitivity or other corporate program, policy or seminar relating to an Employment Practices Claim; or (6) matters which may be deemed uninsurable under the law pursuant to which this policy shall be construed.

If an additional premium is stated in Item 7 of the Declarations page, then Loss shall specifically include, (subject to the policy's other terms, conditions and exclusions, including but not limited to exclusions relating to personal profit or advantage, deliberate fraud, criminal acts or willful violation of any statute, rule or regulation) punitive, exemplary and multiple damages (including the multiple or liquidated damages awards under the Age Discrimination in Employment Act and the Equal Pay Act). It is further understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive, exemplary and multiple damages. If an additional premium is not stated in Item 7 of the Declarations then Loss shall not include punitive, exemplary damages or the multiplied portion of multiple damages.

(l) "Named Entity" means the organization stated in Item 1 of the Declarations whether a corporation, association, limited liability company or other type of business organization.

68462 (8/97)                                        5                         CONFIDENTIAL
KB 032434

(m) "No Liability" means: (1) a final judgment of no liability obtained prior to trial, in favor of all Insureds, by reason of a motion to dismiss or a motion for summary judgment, after the exhaustion of all appeals; or (2) a final judgment of no liability obtained after trial, in favor of all Insureds, after the exhaustion of all appeals. In no event shall the term "No Liability" apply to a Claim made against an Insured for which a settlement has occurred.

(n) "Outside Entity" means:

   (1) a not-for-profit organization under section 501(c)(3) of the Internal Revenue Code of 1986 (as amended); or

   (2) any other corporation, partnership, joint venture or other organization listed by endorsement to this policy.

(o) "Policy Period" means the period of time from the inception date shown in Item 3 of the Declarations to the earlier of the expiration date shown in Item 3 of the Declarations or the effective date of cancellation of this policy.

(p) "Related Wrongful Acts" shall mean Wrongful Acts which are the same, related or continuous, or Wrongful Acts which arise from a common nucleus of facts. Claims can allege Related Wrongful Acts regardless of whether such Claims involve the same or different claimants, Insureds or legal causes of action.

(q) "Retaliation" means a Wrongful Act of an Insured relating to or alleged to be in response to any of the following activities: (1) the disclosure or threat of disclosure by an Employee to a superior or to any governmental agency of any act by an Insured which act is alleged to be a violation of any federal, state, local or foreign law, common or statutory, or any rule or regulation promulgated thereunder; (2) the actual or attempted exercise by an Employee of any right that such Employee has under law, including rights under worker's compensation laws, the Family and Medical Leave Act, the Americans with Disabilities Act or any other law relating to employee rights; (3) the filing of any claim under the Federal False Claims Act or any other federal, state, local or foreign "whistle-blower" law; or (4) Employee strikes.

(r) "Securities Claim" means a Claim (including a civil lawsuit or criminal proceeding brought by the Securities & Exchange Commission) made against an Insured anywhere in the world alleging a violation of any law, regulation or rule, whether statutory or common law, which is:

CONFIDENTIAL
KB 032435

(1)   brought by any person or entity alleging, arising out of, based upon or attributable to, in part or in whole, the purchase or sale, or offer or solicitation of an offer to purchase or sell, any securities of the Company, or

(2)   brought by a securities holder of the Company, whether directly, by class action, or derivatively on the behalf of the Company, or otherwise, alleging any Wrongful Act of an Insured.

(s)   "Subsidiary" means:

(1)   any for-profit organization which, on or before the inception of the Policy Period, is more than 50% owned by the Named Entity, either directly, or indirectly through one or more of its Subsidiaries;

(2)   automatically any for-profit organization whose securities are not publicly traded and whose assets total less than 25% of the total consolidated assets of the Company as of the inception date of this policy which becomes a Subsidiary during the Policy Period. The Named Entity shall provide the Insurer with full particulars of the new Subsidiary before the end of the Policy Period; or

(3)   an organization which becomes a Subsidiary during the Policy Period (other than a for-profit organization described in paragraph (2) above), but only upon the condition that within 90 days of its becoming a Subsidiary, the Named Entity shall have provided the Insurer with full particulars of the new Subsidiary and agreed to any additional premium or amendment of the provisions of this policy required by the Insurer relating to such new Subsidiary. Further, coverage as shall be afforded to the new Subsidiary is conditioned upon the Named Entity paying when due any additional premium required by the Insurer relating to such new Subsidiary.

An organization becomes a Subsidiary when the Named Entity owns more than a 50% ownership interest in such Subsidiary, either directly, or indirectly through one or more of its Subsidiaries. An organization ceases to be a Subsidiary when the Named Entity ceases to own more than a 50% ownership in such Subsidiary, either directly, or indirectly through one or more of its Subsidiaries.

In all events, coverage as is afforded under this policy with respect to a Claim made against Individual Insureds or a Claim made against any Subsidiary, shall only apply to Claims for Wrongful Acts committed or allegedly committed after the effective time that such Subsidiary became a Subsidiary and prior to the time that such Subsidiary ceased to be a Subsidiary.

68462 (8/97)                                         7

CONFIDENTIAL
KB 032436

(t)    "Wrongful Act" means:

(1)    with respect to Individual Insureds, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by such Insureds in their respective capacities as such, or any matter claimed against such Insured solely by reason of their status as directors, officers or Employees of the Company;

(2)    with respect to the Company, any breach of duty, neglect, error, misstatement, misleading statement, omission or act by the Company;

(3)    with respect to service on an Outside Entity, any matter claimed against an Individual Insured as defined in definition (i)(2) arising out of his or her serving as a director, officer, trustee or governor of an Outside Entity in such capacity, but only if such service is at the specific written request or direction of the Company.

With respect to an Employment Practices Claim, the term "Wrongful Act" shall include any Employment Practices Violation.

## 3.    EXTENSIONS

Subject otherwise to the terms hereof, this policy shall cover Loss arising from any Claims made against the estates, heirs, or legal representatives of deceased Individual Insureds, and the legal representatives of Individual Insureds in the event of incompetency, insolvency or bankruptcy, who were Individual Insureds at the time the Wrongful Act upon which such Claims are based were committed.

Subject otherwise to the terms hereof, this policy shall cover Loss arising from all Claims made against the lawful spouse (whether such status is derived by reason of statutory law, common law or otherwise of any applicable jurisdiction in the world) of an Individual Insured for all Claims arising solely out of his or her status as the spouse of an Individual Insured, including a Claim that seeks damages recoverable from marital community property, property jointly held by the Individual Insured and the spouse, or property transferred from the Individual Insured to the spouse; provided, however, that this extension shall not afford coverage for any Claim for any actual or alleged Wrongful Act of the spouse, but shall apply only to Claims arising out of any actual or alleged Wrongful Acts of an Individual Insured, subject to the policy's terms, conditions and exclusions.

## 4.    EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with a Claim made against an Insured:

68462 (8/97)                                   8                          CONFIDENTIAL
                                                                          KB 032437

(a)    arising out of, based upon or attributable to the gaining in fact of any profit or advantage to which an Insured was not legally entitled;

(b)    arising out of, based upon or attributable to: (1) profits in fact made from the purchase or sale by an Insured of securities of the Company within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law; or (2) payments to an Insured of any remuneration without the previous approval of the stockholders of the Company, which payment without such previous approval shall be held to have been illegal;

(c)    arising out of, based upon or attributable to the committing in fact of any criminal, fraudulent or dishonest act, or any willful violation of any statute, rule or law;

       [The Wrongful Act of an Insured shall not be imputed to any other Insured for the purpose of determining the applicability of the foregoing exclusions 4(a) through 4(c).]

(d)    alleging, arising out of, based upon or attributable to the facts alleged, or to the same or Related Wrongful Act alleged or contained in any claim which has been reported, or in any circumstances of which notice has been given, under any policy of which this policy is a renewal or replacement or which it may succeed in time;

(e)    alleging, arising out of, based upon or attributable to as of the Continuity Date, any pending or prior: (1) litigation; or (2) administrative or regulatory proceeding or investigation of which an Insured had notice, or alleging any Wrongful Act which is the same or Related Wrongful Act to that alleged in such pending or prior litigation or administrative or regulatory proceeding or investigation;

(f)    alleging, arising out of, based upon or attributable to any actual or alleged act or omission of an Insured serving in any capacity, other than a director, officer, management committee member, member of the Board of Managers or Employee of the Company, or as a director, officer, trustee or governor of an Outside Entity;

(g)    for any Wrongful Act arising out of an Individual Insured serving in a capacity as a director, officer, trustee or governor of an Outside Entity if such Claim is brought by the Outside Entity or a director, officer, trustee or governor thereof;

68462 (8/97)                                    9                          CONFIDENTIAL
                                                                           KB 032438

(h)  alleging, arising out of, based upon or attributable to any actual or alleged contractual liability of the Company or any other Insured under any express contract or agreement; provided, however, that with respect to Employment Practice Claims, this exclusion shall not apply to the extent any liability does not arise under such express contract or agreement;

(i)  which is brought by any Insured or by the Company; or which is brought by any security holder of the Company, whether directly or derivatively, unless such security holder's Claim is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Insured; provided, however, this exclusion shall not apply to:

(1)  any Claim brought by an Individual Insured where such Claim is in the form of a cross-claim or third-party claim for contribution or indemnity which is part of and results directly from a Claim which is not otherwise excluded by the terms of this policy; or

(2)  an Employment Practices Claim brought by an Employee of the Company other than an Employee who is or was a director, member of the Board of Managers or management committee member of the Named Entity;

(j)  alleging, arising out of, based upon or attributable to any public offering of securities by the Company, an Outside Entity or an Affiliate or alleging a purchase or sale of such securities subsequent to such public offering;

provided, however, that this exclusion will not apply to:

(1)  any purchase or sale of securities exempted pursuant to section 3(b) of the Securities Act of 1933. Coverage for such purchase or sale transaction shall not be conditioned upon payment of any additional premium; however, the Named Entity shall give the Insurer written notice of any public offering exempted pursuant to section 3(b), together with full particulars and as soon as practicable, but not later than 30 days after the effective date of the public offering;

(2)  to any public offering of securities (other than a public offering described in paragraph (1) above) , as well as any purchase or sale of such securities subsequent to such public offering, in the event that within 30 days prior to the effective time of such public offering: (i) the Named Entity shall give the Insurer written notice of such public offering together with full particulars and underwriting information required thereto and (ii) the Named Entity accepts such terms,

68462 (8/97)                                      10                        CONFIDENTIAL
                                                                            KB 032439

conditions and additional premium required by the Insurer for such coverage. Such coverage is also subject to the Named Entity paying when due any such additional premium. In the event the Company gives written notice with full particulars and underwriting information pursuant to (i) above, then the Insurer must offer a quote for coverage under this paragraph;

(k)   alleging, arising out of, based upon or attributable to the purchase by the Company of securities of a "publicly traded entity" in a transaction which resulted, or would result, in such entity becoming an Affiliate or Subsidiary of the Company; provided, however, this exclusion shall not apply in the event that within 30 days prior to it becoming an Affiliate or Subsidiary, the Named Entity gives written notice of the transaction to the Insurer together with full particulars and underwriting information required and agrees to any additional premium or amendment of the provisions of this policy required by the Insurer relating to the transaction. Further, coverage as shall be afforded to the transaction is conditioned upon the Named Entity paying when due any additional premium required by the Insurer relating to the transaction. An entity is a "publicly traded entity" if any securities of such entity have previously been subject to a public offering;

(l)   alleging, arising out of, based upon, attributable to, or in any way involving, directly or indirectly, bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof; provided, however, that this exclusion shall not apply to Securities Claims;

(m)   for emotional distress, or for injury from libel or slander, or defamation or disparagement, or for injury from a violation of a person's right of privacy; provided, however, this exclusion shall not apply to any Securities Claim or Employment Practices Claim;

(n)   for any actual, alleged or threatened discharge, dispersal, release or escape of pollutants; or for any direction or request to test, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants; provided, however this exclusion shall not apply to any Claim brought by a securities holder of the Company in its capacity as such or to any Employment Practices Claim;

(o)   for violation(s) of any of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act, the Occupational Safety and Health Act, any rules or

68462 (8/97)                                                11                                   CONFIDENTIAL
KB 032440

regulations of the foregoing promulgated thereunder, and amendments thereto or any similar provisions of any federal, state, local or foreign statutory law or common law; provided, however, that this exclusion shall not apply to Loss arising from a Claim for Retaliation;

(p) alleging, arising out of, based upon or attributable to any obligation pursuant to any worker's compensation, disability benefits, unemployment compensation, unemployment insurance, retirement benefits, social security benefits or similar law; provided, however, this exclusion shall not apply to Loss arising from a Claim for Retaliation;

(q) with respect to Coverage B(i) only:

    (1) for any actual or alleged plagiarism, misappropriation, infringement or violation of copyright, patent, trademark, trade secret or any other intellectual property rights;

    (2) for any actual or alleged violation of any law, whether statutory, regulatory or common law, respecting any of the following activities: anti-trust, business competition, unfair trade practices or tortious interference in another's business or contractual relationships;

    (3) for the rendering or failure to render any service to a customer or client of the Insured; provided, however, that this exclusion shall not apply to any:

        (i) Claim solely alleging Employment Practices Violations;

        (ii) Securities Claim; or

        (iii) Claim for the rendering or failure to render any professional service to the extent such professional services errors and omissions coverage has been added to this policy by written endorsement attached hereto;

    (4) seeking fines or penalties or non-monetary relief against the Company; provided, however, that this exclusion shall not apply to any Securities Claim or Employment Practices Claim.

5. **LIMIT OF LIABILITY and REINSTATED LIMIT OF LIABILITY (FOR ALL LOSS - INCLUDING DEFENSE COSTS)**

Defense Costs are not payable by the Insurer in addition to the limit of liability. Defense Costs are part of Loss and as such are subject to the applicable Limit of Liability for Loss.

68462 (8/97)          12          CONFIDENTIAL
KB 032441

### A. General Terms

The Limit of Liability stated in Item 4 of the Declarations is the limit of the Insurer's liability for all Loss, under Coverage A and Coverage B combined, arising out of all Claims first made against the Insureds during the Policy Period and the Discovery Period (if applicable); however, the Limit of Liability for the Discovery Period shall be part of, and not in addition to, the Limit of Liability for the Policy Period, or the Reinstated Limit as described below (if elected). Further, a Claim which is made subsequent to the Policy Period or Discovery Period (if applicable) which pursuant to Clause 7(b) or 7(c) is considered made during the Policy Period or Discovery Period shall also be subject to the one applicable aggregate Limit of Liability stated in Item 4 of the Declarations, or subject to the one aggregate Reinstated Limit if such Reinstated Limit is applicable to such Claim.

### B. Reinstated Limit of Liability

In the event of a Claim under this policy, the Named Entity shall have the right to purchase a Reinstated Limit equal to the Limit of Liability stated in Item 4 of the Declarations. The Reinstated Limit shall be subject to the following conditions:

1. The right to elect the Reinstated Limit commences on the date a Claim is reported to the Insurer and expires on the last day of the Policy Period; provided, that in all events, only one reinstatement is permitted under this policy. The effective date of the reinstatement shall be the date on which the Insurer acknowledges receipt of the written notice of the Insured's election to exercise the reinstatement.

2. If the Policy Period of this policy is more than one year, then the additional premium to elect the Reinstated Limit at any time after one year from the inception date of this policy shall be fixed at 150% of the premium set forth in Item 7 of the Declarations. Regardless of the length of the Policy Period of this policy, the additional premium to elect the Reinstated Limit within one year from the inception date of this policy shall be an amount determined by the Insurer at the time of the election of the Reinstated Limit unless otherwise indicated by written endorsement to this policy.

3. The Reinstated Limit shall only apply to Claims made against an Insured after the effective date of the reinstatement and prior to the end of the Policy Period or the Discovery Period, if applicable, ("Reinstatement Claims"); provided, however, that the Reinstated Limit shall not apply to Claims which allege a Related Wrongful Act to Claim(s) reported to the Insurer prior to the effective date of the reinstatement.

68462 (8/97)                           13
CONFIDENTIAL
KB 032442

4. The Reinstated Limit shall be the maximum liability of the Insurer for all Reinstatement Claims. The Limit of Liability described in Clause 5A as applicable to Claims made against the Insureds prior to the effective date of the reinstatement shall not apply to any Reinstatement Claim.

5. Upon exercise of the Reinstated Limit, the entire premium set forth in Item 7 of the Declarations shall be deemed fully earned; the Insureds shall not be entitled to any return premium as a result of the exercise of the Reinstated Limit nor shall any of the premium paid for the policy be credited toward the additional premium required to exercise the Reinstated Limit.

6. In no event shall the right to a reinstatement apply if prior to the effective date of the reinstatement, this policy has been cancelled, is otherwise not in effect, or the Discovery Period has been elected.

7. Other than as stated above, coverage for Reinstatement Claims shall be subject to the same terms, conditions and exclusions of the policy applicable to other Claims under this policy. The Insurer cannot otherwise modify any terms, conditions or exclusions of this policy as a condition of providing the reinstatement.

## 6. RETENTION CLAUSE

The Insurer shall only be liable for the amount of Loss arising from a Claim which is in excess of the Retention amount stated in Item 5 of the Declarations, such Retention amount to be borne by the Company or the Insureds and shall remain uninsured, with regard to all Loss under: (1) Coverage A or B(ii) for which the Company has indemnified or is permitted or required to indemnify the Individual Insured(s) ("Indemnifiable Loss"), or (2) Coverage B(i). A single Retention amount shall apply to Loss arising from all Claims alleging the same Wrongful Act or Related Wrongful Act. ..

Subject to the above paragraph, the Retention amounts stated in Item 5 of the Declarations shall apply. In the event a Claim triggers more than one amount stated in Item 5 of the Declarations, only the highest such amount shall apply, which amount shall apply to all Loss under such Claim.

The Retention amount shall be reduced in the event that an Insured consents to the first "Settlement Opportunity", as defined in Clause 8, by the percentage described in Clause 8, subject to the conditions described in Clause 8.

No Retention shall apply to a Claim which is in the form of a civil action for monetary relief and the Insurer shall thereupon reimburse the Defense Costs paid by the Insured, in the event of:

68462 (8/97)                              14

CONFIDENTIAL
KB 032443

(1)    a determination of No Liability of all Insureds; or

(2)    a dismissal or a stipulation to dismiss the civil litigation Claim without prejudice and without the payment of any consideration by any Insured;

provided, however, that in the case of (2) above, such reimbursement shall occur ninety (90) days after the date of dismissal or stipulation as long as the Claim is not re-brought (or any other Claim which is subject to the same single retention by virtue of Clause 6 is not brought) within that time, and further subject to an undertaking by the Company in a form acceptable to the Insurer that such reimbursement shall be paid back by the Company to the Insurer in the event the Claim (or any other Claim which is subject to the same single retention by virtue of Clause 6) is brought after such 90 day period and before the expiration of the statute of limitations for such Claim.

7.    NOTICE/CLAIM REPORTING PROVISIONS

Notice hereunder shall be given in writing to the Insurer named in Item 8 of the Declarations at the address indicated in Item 8 of the Declarations.

If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice. A Claim shall be considered to have been first made against an Insured when written notice of such Claim is received by any Insured, by the Company on the behalf of any Insured or by the Insurer, whichever comes first.

(a)    The Company or the Insureds shall, as a condition precedent to the obligations of the Insurer under this policy, give written notice to the Insurer of any Claim made against an Insured as soon as practicable and either:

(1)    anytime during the Policy Period or during the Discovery Period (if applicable); or

(2)    within 30 days after the end of the Policy Period or the Discovery Period (if applicable), as long as such Claim is reported no later than 30 days after the date such Claim was first made against an Insured.

(b)    If written notice of a Claim has been given to the Insurer pursuant to Clause 7(a) above, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging a Related Wrongful Act to the Claim for which such notice has been given shall be considered made at the time such notice was given.

(c)    If during the Policy Period or during the Discovery Period (if applicable) the Company or the Insureds shall become aware of any circumstances which may

68462 (8/97)                            15

CONFIDENTIAL
KB 032444

reasonably be expected to give rise to a Claim being made against the Insureds and shall give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, then any Claim which is subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Related Wrongful Act to such circumstances, shall be considered made at the time such notice of such circumstances was given.

8. **DEFENSE COSTS, SETTLEMENTS, JUDGMENTS (INCLUDING THE ADVANCEMENT OF DEFENSE COSTS)**

The Insurer does not assume any duty to defend. The Insureds shall defend and contest any Claim made against them.

Notwithstanding the foregoing, the Insureds shall have the right to tender the defense of the Claim to the Insurer, which right shall be exercised in writing by the Named Entity on behalf of all Insureds to the Insurer pursuant to the notice provisions of Clause 7 of this policy. This right shall terminate if not exercised within 30 days of the date the Claim is first made against an Insured, pursuant to Clause 7 of the policy. Further, from the date the Claim is first made against the Insureds to the date when the Insurer accepts the tender of the defense of such Claim, the Insureds shall take no action, or fail to take any required action, that prejudices the rights of the Insureds or the Insurer with respect to such Claim. Provided that the Insureds have complied with the foregoing, the Insurer shall be obligated to assume the defense of the Claim, even if such Claim is groundless, false or fraudulent. The assumption of the defense of the Claim shall be effective upon written confirmation sent thereof by the Insurer to the Named Entity. Once the defense has been so tendered, the Insured shall have the right to effectively associate with the Insurer in the defense and the negotiation of any settlement of any Claim, subject to the provisions of this Clause 8. However, the Insurer shall not be obligated to defend such Claim after the Limit of Liability has been exhausted, or after an Insured's rejection of a Settlement Opportunity as defined in this Clause 8.

When the Insurer has not assumed the defense of a Claim pursuant to this Clause 8, the Insurer shall advance nevertheless, at the written request of the Insured, Defense Costs prior to the final disposition of a Claim. Such advanced payments by the Insurer shall be repaid to the Insurer by the Insureds or the Company, severally according to their respective interests, in the event and to the extent that the Insureds or the Company shall not be entitled under the terms and conditions of this policy to payment of such Loss.

68462 (8/97)

16

CONFIDENTIAL
KB 032445

The Insureds shall not admit or assume any liability, enter into any settlement agreement, stipulate to any judgment, or incur any Defense Costs without the prior written consent of the Insurer. Only those settlements, stipulated judgments and Defense Costs which have been consented to by the Insurer shall be recoverable as Loss under the terms of this policy. The Insurer's consent shall not be unreasonably withheld, provided that the Insurer, when it has not assumed the defense of a Claim pursuant to this Clause 8, shall be entitled to effectively associate in the defense and the negotiation of any settlement of any Claim, and provided further that in all events the Insurer may withhold consent to any settlement, stipulated judgment or Defense Costs, or any portion thereof, to the extent such Loss is not covered under the terms of this policy.

The Insurer shall have the right to effectively associate with the Company in the defense of any Claim that appears reasonably likely to involve the Insurer, including but not limited to negotiating a settlement. The Company and the Insureds shall give the Insurer full cooperation and such information as it may reasonably require.

If the Insurer recommends a settlement within the policy's applicable Limit of Liability which is acceptable to the claimant (a "Settlement Opportunity"), and the Insureds consent to such settlement, then the Insured's applicable retention amount shall be retroactively reduced by ten percent (10%) for such Loss.  It shall be a condition to such reduction that the Insureds must consent to such settlement within thirty (30) days of the date the Insureds are first made aware of the Settlement Opportunity, or in the case of a Settlement Opportunity which arises from a settlement offer by the claimant, then within the time permitted by the claimant to accept such settlement offer, but in all events no later than thirty (30) days after the settlement offer was made.

However, if a Settlement Opportunity arises and the Insureds do not consent to the settlement within the time prescribed above, the retention amount shall remain the applicable amount set forth in Item 5 of the Declarations even if consent is given to a subsequent Settlement Opportunity.

Furthermore, in the event the Insureds do not consent to the first Settlement Opportunity within the time prescribed, then, subject to the applicable limit of liability, the Insurer's liability for all Loss on account of such Claim shall not exceed: (1) the amount for which the Insurer could have settled such Claim plus Defense Costs incurred as of the date such settlement was proposed in writing by the Insurer, ("Settlement Opportunity Amount") plus (2) 50% of covered Loss in excess of such Settlement Opportunity Amount, it being a condition of this insurance that the remaining 50% of such Loss excess of the Settlement Opportunity Amount shall be carried by the Company and the Insureds at their own risk and be uninsured. Notwithstanding the foregoing, this paragraph shall not apply until the Settlement

68462 (8/97)                                17                          CONFIDENTIAL
KB 032446

Opportunity Amount exceeds the Retention amount stated in Item 5 of the Declarations.

9.  PRE-AUTHORIZED DEFENSE ATTORNEYS FOR DESIGNATED CLAIMS

This clause applies only to an Employment Practices Claim or a Securities Claim (each of the foregoing hereinafter referred to as a "Designated Claim").

Affixed as Appendix A hereto and made a part of this policy is a list or lists of Panel Counsel law firms ("Panel Counsel Firms") from which a selection of legal counsel shall be made to conduct the defense of any Designated Claim against an Insured pursuant to the terms set forth below.

In the event the Insurer has assumed the defense pursuant to Clause 8 of this policy, then the Insurer shall select a Panel Counsel Firm to defend the Insureds. In the event the Insureds are already defending a Designated Claim, then the Insureds shall select a Panel Counsel Firm to defend the Insureds.

The selection of the Panel Counsel Firm, whether done by the Insurer or the Insureds, shall be from the list of Panel Counsel Firms designated for the type of Claim and be from the jurisdiction in which the Designated Claim is brought.  In the event a Designated Claim is brought in a jurisdiction not included on the appropriate list, the selection  shall be made from a listed jurisdiction which is the nearest geographic jurisdiction to either where the Designated Claim is maintained or where the corporate headquarters or state of formation of the Named Entity is located.  In such instance, however, the Insurer shall, at the written request of the Named Entity, assign a non-Panel Counsel Firm of the Insurer's choice in the jurisdiction in which the Designated Claim is brought to function as "local counsel" on the Designated Claim to assist the Panel Counsel Firm which will function as "lead counsel" in conducting the defense of the Designated Claim.

With the express prior written consent of the Insurer, an Insured may select (in the case of the Insured defending the Claim), or cause the Insurer to select (in the case of the Insurer defending the Claim), a Panel Counsel Firm different from that selected by other Insured defendants if such selection is required due to an actual conflict of interest or is otherwise reasonably justifiable.

The list of Panel Counsel Firms may be amended from time to time by the Insurer. However, no change shall be made to the specific list attached to this policy during the Policy Period without the consent of the Named Entity.

68462 (8/97)                              18                    CONFIDENTIAL
                                                               KB 032447